The prisoner on his arraignment pleaded "Not guilty," and, before he was put on trial moved for leave to withdraw his plea and plead in abatement, a fact which was admitted, viz., that the foreman of the grand jury which found the bill was also one of the corner's inquest which sat on the body of the deceased, and, further, that the record sent from Bladen, from which county the cause was removed by the prisoner, did not show that the jury which found the bill was composed of members of the original panel. The court refused the motion and proceeded to the trial.
When the tales jurors were returned, the prisoner challenged the array after the petit jurors of the original panel were either challenged or accepted: First, because the order of the court did not direct the sheriff to summon bystanders, and the talesman returned were not bystanders; second, because the order was not made returnable on the same day on which it was issued; and, third, because the order directed the sheriff to summon too great a number of jurors (75), six of the original panel having appeared. The prisoner's challenge was not allowed.
On the trial the prisoner attempted to establish an alibi, and introduced a witness who swore that on the night of the murder he was at the prisoner's house, and when going away the prisoner said he wished to go to one McLenan's, and requested the witness to accompany him. Witness said he would do so if the prisoner would go by the house of the witness, to which the prisoner consented. When they arrived at the house of the witness, the prisoner was requested to remain all night, which *Page 90 
(177) at first he refused to do, but afterwards, remarking that it was too late to go to McLenan's, consented. Witness and prisoner laid down to sleep about 12 o'clock; how long witness slept he did not know, but on awaking thought the moon between two and three hours high, and found prisoner preparing to depart, and he soon went away.
The presiding judge, on this evidence, remarked to the jury that it was probable the prisoner had some intention in his visit to McLenan, and it was the business of the jury to ascertain whether he had or not, and what it was, if he had any; and also what effect it would have in the cause.
The prisoner was found guilty, and moved in arrest because, first, there was no sufficient description of the place where the assault was alleged to have been committed; second, there was no issue joined between the State and the prisoner, there having been no replication to prisoner's plea. These reasons were overruled, and from the judgment pronounced the prisoner appealed.
It cannot be collected from the charge that the judge gave an opinion to the jury whether any matter of fact was sufficiently proved or not. After summing up the circumstances attending the conduct of the prisoner while at the witness's house, as described by the witness, the judge remarks that it was probable the prisoner had some intention, and that the jury must ascertain whether he had or not, and if he had, what that intention was, what effect it would have in the cause. It was proper that those circumstances should have been distinctly presented to the view of the jury, that they might consider what inference they warranted, either of the prisoner's innocence or guilt; and if the judge had instructed them that from these circumstances they ought to infer either guilt or innocence, it would have been a departure from his prescribed duty. But this is cautiously and properly avoided, and the evidence is left without influence to the jury to decide whether (178) it established the fact for which it was adduced.
The first reason in arrest is that there is no sufficient description of the place where the assault is alleged to have been committed by the prisoner. But the indictment states the prisoner to have been late of Bladen County, and in the same sentence states that the assault was committed in the county aforesaid. If the county had been stated in the margin alone, and but one county named in this case, the words "county aforesaid" have sufficient reference to the county in the margin. 1 Saund., 308, note 1. The second reason in arrest is equally untenable, for in capital cases the issue is immaterial, for the plea and the joining of issue called the similiter are ore tenus, nor is it usual to make up a formal issue preparatory to the trial, or *Page 91 
to consider the total omission of the similiter as sufficient to invalidate the proceedings. 4 Burr., 2084. This peculiarity arises from the nature of the trial, in its origin, which was considered in the manner of an inquisition, charging the jury to inquire into the truth of the charge against the prisoner.
It is complained of that the prisoner moved the court for leave to withdraw his plea of not guilty, and to plead in abatement, or to add a plea in abatement, to the plea of not guilty, which the court refused. This, however, was a subject altogether within the discretion of the court, and could not be claimed as a matter of right, for when the prisoner had once pleaded he was bound to abide by the defense he had chosen. An act done in the exercise of a legal discretion is not the subject of appeal to this Court.
Whether the objection that one of the grand jury had been on the jury of inquest would have been valid if made at a proper stage of the case, it is not necessary to decide; for it has heretofore been adjudged that such an exception cannot be taken after conviction. S. v.McIntire, 4 N.C. 267. (179)
The objection that the record does not state the grand jury was drawn from the original panel returned to Bladen Superior Court cannot prevail. The record transmitted to this Court informs us that the grand jury in the Superior Court were drawn, sworn, and charged. From what could they be drawn except from the list of the original venire? But independently of this the record states that the grand jury returned into court the indictment and so much credit is due to the court that it must be believed that the grand jury was selected in the manner appointed by law. It is not necessary that the record should state the formula and process by which the grand jury is constituted. Being a grand jury, we must understand that they were constituted by the means and through the ceremony required by law; for if they were not so constituted, the objection is at least as serious as some of the others taken to the conviction, and would in all probability, have been made by way of affirmation on the part of the prisoner, and been established by proof of the fact.
The remaining objection is that relative to the summoning of the talesmen, and is divided into three parts: First, that the order did not direct the sheriff to summon bystanders, and that the jurors so called were not summoned from among the bystanders; second, because the order was not made returnable the same day on which it was issued, but the next day; third, because the order directed the sheriff to summon too great a number of persons, six of the original panel having appeared.
1. The order directed the sheriff to summon good and lawful men, and if the order had been disobeyed the sheriff was answerable to the *Page 92 
court; but if the persons attended, the calling them into court was a sufficient summoning; they were then bound to serve, and were also qualified, although they had been called from a distance. Whether the court could lawfully have fined them for that they were (180) not about the courthouse when summoned is another consideration. But being assembled there, there is nothing in the law to prevent them from being lawful talesmen.
2. The law does not require the order to be returnable the same day; it only requires the talesmen to be every day discharged. The time when they are summoned does not enter into their qualification to serve, though it may operate on the mind of the court not to enforce their service.
3. Seventy-five talesmen were directed to be summoned; and as the law is silent with respect to the number, it unavoidably belongs to the discretion of the court to specify the number that it may deem necessary; or, if the court make no direction, to leave it to the sheriff to summon the number he may think necessary. In a capital case where the prisoner has thirty-five peremptory challenges, and an unlimited number for cause, the number summoned seems reasonable; more especially in a case where the prisoner had sworn that unfounded reports, tending to inflame the public mind, had been in circulation in the county whence the cause was removed, and that a large number of freeholders had formed and expressed an opinion unfavorable to him. It was extremely probable that this prejudice and excitement would extend into the county where he was tried, and thereby disqualify many of the persons who were summoned from serving. It was therefore every way proper that a large number should be summoned. I am consequently of opinion that the motion for a new trial, and the reasons in arrest of judgment, were properly overruled, and that there is no error in the record transmitted to this Court.