### THE STATE OF KANSAS v. E. M. OTTO.

**No. 11,314.**   (58 Pac. 995.)

JURY AND JURORS—*Challenge for Cause.*   In a prosecution for larceny, a juror, while being examined, stated upon his *voir dire* that he had an opinion that the defendant took stolen cattle to market. This being a material question in the case, toward which the testimony of several witnesses for the state was directed, it was error to overrule the defendant's challenge of the juror for cause.

Appeal from Clark district court; FRANCIS C. PRICE, judge.   Opinion filed November 11, 1899.   Reversed.

STATEMENT.

THE appellant was convicted of grand larceny.   At the trial one George Dugan was called as a juror and examined under oath touching his qualifications to sit in the case.   He testified, in answer to questions propounded by the county attorney, that he had heard a statement of the facts in the case, but that he had never heard anybody go into detail very much about it; that he had talked with no witness or persons in interest or attorneys; that he could not say he had heard enough to form any opinion, and had not formed any, and knew of no reason why he could not sit and try the case fairly and impartially.   He was then passed for cause by the state.   Upon his examination by counsel for the defendant, he gave answers as follows:

" Ques.   You have heard this case talked about considerable, have n't you?   Ans.   I have heard the subject mentioned pretty often.

" Q.   You have heard people talk about it who claimed to know what the facts were, have you not? A.   Yes, sir.

" Q.   Now, from what they said did you form an

opinion as to the guilt or innocence of the defendant? A. No, sir, I have n't.

"Q. Did you form an opinion as to whether or not Mr. Hall had any cattle taken from him by theft? A. No, sir.

"Q. Did you ever talk with any one who was present at the preliminary examination? A. No one that I know of.

"Q. You talked with 'Squire Rogers? A. No, sir.

"Q. Ever hear him talk? A. No, sir; not about this case.

"Q. Do you recall who you heard talk about the case? A. Yes, sir.

"Q. Any one who is a witness in the case? A. I do n't know whether they are or not.

"Q. Who was it you heard talk about the case? A. Mr. Ravenscraft and Mr. Weldon.

"Q. Did they express an opinion? A. Yes, sir.

"Q. Well, they claimed to know something about it, did n't they? A. They gave me that impression.

"Q. And they expressed an opinion? A. Yes, sir.

"Q. They talked it over, did they? A. No, they did n't talk it over; they merely expressed an opinion; they never went into detail in my presence, that I heard it.

"Q. Did that make any impression on you? A. I cannot say that it did.

"Q. Who else did you hear talk about the case? A. I cannot recollect any other names now.

"Q. You think your mind is as free as if you had never heard these gentlemen talk about the case? A. Well, I do n't hardly believe it is; I never heard enough to form any positive conclusion in the matter.

"Q. You form any opinion as to whether Mr. Hall lost any cattle by theft? A. I took it for granted that he did, but I never heard any one say; I never heard any one talk and go into detail in the case; I just heard about some parts of it.

"Q. Do you feel as though these expressions you heard would influence you in the matter? A. No; I do n't think they would influence me.

The State v. Otto.

"Q. You say your mind is n't as free as though you had n't heard these men talk about it? A. No, it is hardly as free, yet that would n't influence me.

"Q. Then there are some points you have an opinion or impression on and which would require evidence to remove? A. Yes, sir.

"Q. Now, taking together what you have heard, and the defendant charged with this offense, it would require evidence to change the views that you had, would it not? A. Yes, sir, on some things I have heard; yet I do n't know whether they had any reference to this case; that had reference to the case that was up at the preliminary trial.

"Q. Then you were told some things that occurred at the preliminary? A. Yes, sir; since you have been asking the question I can recall some matters now.

"Q. Now, then, from the relating of these things by these men you formed some kind of an opinion about some matters connected with the case? A. Yes, sir; some matters.

"Q. And it would require evidence to change that, would n't it? A. Yes, sir, it would.

"Q. Then this opinion you have formed and these expressions you heard from these men as to the preliminary examination, you would retain the opinion until there was evidence adduced here to change it? A. Yes, sir.

"Q. How old are you, Mr. Dugan? A. Twenty-two.

"Q. Your name appear on the tax-roll of this county? A. Yes, sir.

"Q. You are a taxpayer, are you? A. Yes, sir.

"Q. Have you an opinion now as to whether or not Dick Hall lost any cattle by theft or whether or not the defendant took away—took out of the county any cattle belonging to Dick Hall? A. No.

"Q. You have no such opinion? A. No, sir.

"Q. Have you an opinion whether or not the defendant took any stolen cattle to market? A. Yes, sir, I have an opinion.

"Q. You formed that opinion from what you heard? A. Yes, sir.

The State v. Otto.

"Q. And you would be of that opinion until there was evidence introduced to change it? A. Yes, sir.

"Q. You understood that it was claimed that Mr. Otto took to market some cattle that Dick Hall claimed were stolen; that is a fact, isn't it? A. I didn't know who claimed they were stolen.

"Q. You knew it was claimed they were stolen cattle? A. Yes, sir.

"Q. Well, from what you heard then, you formed an opinion that he had taken cattle which were stolen to market? A. Yes, sir.

"Q. And you would be of that same opinion until there was some evidence introduced to change it? A. Yes, sir.

"Q. At the time you formed this opinion the conversation was about the case against the defendant Otto wasn't it? A. Yes, sir.

"Q. That is what they were talking about? A. Yes, sir.

By the court: "Q. Did you form an opinion as to whether these cattle were the cattle he was charged with having stolen in this case; did you form an opinion on that question? A. I rather inferred from the conversation they belonged to another party; I never asked any questions about the case at all."

The appellant having challenged the juror for cause, the same was overruled. He then exhausted his peremptory challenges, and the said George Dugan remained as one of the jurors who tried the cause.

*A. A. Godard*, attorney-general, and *J. M. Grasham*, county attorney, for The State.

*Thomas B. Wall, H. G. Ruggles*, and *R. M. Painter*, for appellant.

The opinion of the court was delivered by

SMITH, J. : At the trial it was claimed by the state that a large part, if not all, of the cattle shipped by the appellant from Englewood to Kansas City, con-

sisting of one car-load, were stolen. Several witnesses
testified in support of this contention. Bearing on
this, the court gave an instruction to the jury that the
defendant could not be convicted of larceny of any
other cattle than the ones mentioned in the informa-
tion. The prosecution proceeded on the theory of a
conspiracy between the defendant and his accomplice,
Theodore Wolfley, to steal twenty or more head of cat-
tle included in this shipment and sell them in the
market at Kansas City. While both were accused of
the theft but one was prosecuted.

It will be noticed from the statement that the juror
Dugan testified that he had an opinion that the de-
fendant took stolen cattle to market; that he had
heard people talk about it who claimed to know the
facts; that from the opinion he had formed and the
expressions he heard from men regarding the prelimi-
nary examination he would retain that opinion until
there was evidence adduced to change it; that it would
take evidence to remove the opinion that the defendant
had taken cattle which were stolen to market; and
that this opinion was formed in a conversation about
the case against the defendant. The juror also testi-
fied that there were some points concerning which he
had an impression that it would require evidence to
remove. It was a material fact in the case, toward
which much of the testimony was directed, whether
the defendant took stolen cattle to market. Having
such an opinion on this branch of the inquiry, the
juror was already won over to the side of the state on
a matter largely decisive of the defendant's guilt.

We cannot say that the juror had not formed an
opinion on an issue, or a material fact to be tried.
The juror no doubt thought he could render a fair and
impartial verdict. What he had heard did not, in his

estimation, bias his judgment nor make his mind more receptive of testimony tending toward conviction than if he had nothing of the matters in issue. Communicated information of facts concerning charges against a man accused of crime frequently produces in the person receiving it a resulting condition of mind amounting to a strong and deep impression, for the reason that criminal acts are exceptional and create comment in a community. Coming unexpectedly, and being out of the ordinary run of events, a report or rumor concerning them fixes the attention and, provoking discussion, often results in the formation and expression of an opinion by the hearer. Courts should therefore, when a juror testifies to having an impression, permit a liberal inquiry to determine whether that impression is so fixed and positive in character as to amount to an opinion.

It is the duty of the court, imposed both by statute and by the principles of natural justice, to stand as a vigilant guard over the jury-box, to the end that bias, prejudice and preconceived opinion do not enter. It is better that the first impression of a case come from the testimony of the witnesses after the jurors are sworn to try the cause. While there is recognized in the law a distinction between an impression and an opinion, yet there is so little difference between the two, and the step so short from one to the other, that courts should be certain that a juror's mind which is possessed of the one has received it with pressure too weak to break over the dividing line.

We extract from our own reports the following:

"Whenever it appears from the statements of a juror, when being examined touching his qualifications, that his mind is in such condition respecting the issue or any material fact to be proved at the trial, that it will require evidence to remove some

opinion or impression that has become fixed, relating to such issue or material fact, it cannot be said that he is an impartial juror." (*The State v. Beatty*, 45 Kan. 492, 502, 25 Pac. 899.)

"But it may be said that the opinion of the juror in the present case was founded merely upon rumor. Now there is nothing in the constitution, or in the statutes, providing, or even intimating, that a juror who has formed an opinion upon rumor only may be competent to serve in the case. It may also be said, in the present case, that the juror stated upon his *voir dire* that he had no bias or prejudice against the defendant, and would be governed entirely by the evidence in the case in making up his verdict, and that he believed that he could try the case impartially. The juror was probably sincere in stating this. . . .

"The fact, in the present case, that the juror had an opinion with respect to the guilt or innocence of the defendant, and that he had no doubt as to the correctness of his opinion, and that his opinion would remain until it should be removed by evidence, was sufficient to render the juror incompetent to serve in the case." (*The State v. Miller*, 29 Kan. 43, 47.)

"It is well settled that those who come to the trial of a cause with opinions of a fixed and positive character as to the guilt of a defendant are not qualified jurors, although they may state that they believe they could give the accused a fair and impartial trial." (*The State v. Start*, 60 Kan. 256, 258, 56 Pac. 15.)

"But where, as in this case, the jurors hold strong and deep impressions which amount to opinions, and which are of a fixed and positive character, such as will require evidence to change, it is an abuse of discretion to admit them as jurors." (*The State v. Snodgrass*, 52 Kan. 174, 178, 34 Pac. 750.)

"He (the juror) insisted throughout his examination that he entertained an opinion, and not a mere impression. It was not based on newspaper account alone, or mere rumor, but he had learned the facts from those who assumed to know them, and on these had formed and expressed an opinion in regard to the guilt of the defendant. It is true he stated that he

believed that he could give the defendant a fair and impartial trial, but a person holding an opinion formed in such a way and of such a fixed and positive character does not possess the qualifications which the law requires." (*The State v. Beuerman*, 59 Kan. 586, 588, 53 Pac. 874.)

The juror being disqualified to sit, the judgment of the court below will be reversed, and the cause remanded for a new trial.