UNITED STATES, respondent, *v.* UPHAM, appellant.

INDICTMENT — *description of court.*    The caption of the indictment in this case described the court as " the United States District Court of the Territory of Montana, for the Second Judicial District."    *Held,* that there is no " United States District Court" in said Territory.    *Held,* also, that the indictment is not vitiated by this erroneous description of the court, because the record accompanying the indictment shows that the same was found by a court having jurisdiction of the offense charged.

INDICTMENT FOR CONSPIRACY TO DEFRAUD THE UNITED STATES.    Said indictment charged that three persons, an Indian agent, his clerk and a trader, conspired and agreed together to procure the goods of the United States, to be disposed of fraudulently for money, and thereby intended to cheat and defraud the United States.    *Held,* that said indictment is good.

EMBEZZLEMENT — *Indian agent.*    There is no statute of the United States under which an Indian agent can be indicted for embezzlement.

EVIDENCE OF FRAUD — *distribution of Indian goods.*    Upon the trial of said persons, under said indictment, it appeared that said goods had been deposited with said Indian agent for distribution to the Indians.    *Held,* that the government could prove that the Indians had not received the goods.

VERDICT IN CRIMINAL CASE.    A verdict of guilty in a criminal action will be sustained if there is substantial proof to support it.

EVIDENCE WITHDRAWN BY COURT FROM JURY. A witness was asked if one
of said persons had made any confession to him, and, during the discussion
of an objection to the question, answered that he had.   The answer was
withdrawn from the jury by the court.    *Held,* that the rights of said per-
son were not prejudiced by these proceedings.

BIAS OF JUROR — *verdict set aside.*   A person who has talked about the " In-
dian agency cases," and evinced bias generally in such cases, is not com-
petent to serve as a juror upon the trial of said Indian agent for conspir-
ing, with others, to defraud the United States ; and a verdict of guilty
returned by the jury (of which he was a member), in this case, must be
set aside.

### *Appeal from Second District, Deer Lodge County.*

THIS is the second appeal in this case.    The first is reported,
*ante,* 113.    The case was tried by KNOWLES, J., with a jury, and
appellants were convicted.

W. F. SANDERS, SHARP & NAPTON and ° SHOBER & LOWRY, for
appellants.

There is no such court as that described in the indictment,
" The United States District Court of the Territory of Montana
for the Second Judicial District."    The indictment has not been
found by a legal jury.    1 Archb. Cr. Pr. 256 ; 1 Bishop's Cr.
Pr., §§ 152, 155 ; 2 Abb. U. S. Pr. 177 ; *Sanders* v. *Farwell,* 1
Mon. 599, and cases there cited.

No offense is alleged in the indictment.    Conspiring to procure
goods to be embezzled is not made an offense under the laws of
the United States.    When such a fraud as may be punished crim-
inally is actually committed by several persons in pursuance of a
conspiracy, the conspiracy, as such, is not indictable, but the fraud
only.    *Lambert* v. *People,* 9 Cow. 586 ; *Commonwealth* v. *Hunt,*
4 Metc. 111 ; 2 Bishop's Cr. Law, 200 ; 1 Bishop's Cr. Pr. 169 ; 2
Brightly's Dig. 158, § 28.

The indictment shows that Ensign, one of the indicted parties,
came properly in the possession of the goods described.    If he
converted them to his use he committed no crime, but is liable on
his bond civilly.    The appellants commit no offense by receiving
the property from Ensign.    The indictment does not show the
means intended to be used to defraud, and is insufficient.    *Com-
monwealth* v. *Shedd,* 7 Cush. 514.

The testimony relating to the distribution of goods to Indians by Ensign was clearly incompetent. The appellants had no control over the acts of Ensign as Indian agent, and bore no fiduciary relation to him.

The testimony of Clagett was admitted under objection, and afterward excluded. This did not cure the error. *Erben* v. *Lorillard*, 19 N. Y. 302; 2 Graham & W. 645.

There is no testimony to establish a conspiracy.

The court erred in its instructions to the jury.

One of the jurymen, Warren, was prejudiced, and had expressed an opinion as to the guilt of the appellant before he was called on the jury. He was an incompetent juror. *Tenny* v. *Gilchrist* 12 N. H. 462; *Busick* v. *State*, 19 Ohio 198; *United States* v. *Fries*, 3 Dall. 517; *People* v. *Plummer*, 9 Cal. 298; 2 Graham & W. New T. 396.

M. C. PAGE, U. S. Attorney, for respondent.

The caption is no part of an indictment. It may be wholly omitted if sufficiently supplied by the record. This is done in this case. 1 Wharton's Cr. Law, § 220.

The words of the caption are not words of naming, but of description. The court is sufficiently described to prevent any misapprehension. The statute precludes objections to the form of the indictment, which do not prejudice defendant. Cod. Sts. 198.

It is not necessary to charge that the object of the conspiracy was a legal crime, or that the means to be used were criminal. The offense charged is the creature of the statute, and we cannot borrow from the common law a foreign ingredient and attach it to the offense. The indictment follows the form in similar cases. 2 Wharton's Prec., form 638.

The proof of the declarations of the juror, Warren, is contradicted or explained away.

WADE, C. J. This is an indictment charging the defendants with a conspiracy to defraud the United States, and they ask a reversal of the judgment herein for the following reasons:

1. That no offense is alleged in the indictment, and that the court in which the same was found is unknown to the law.

2. That improper testimony was allowed to go to the jury.

3. That the testimony is insufficient to sustain the verdict.

4. That the court erred in the charge to the jury ; and

5. That one of the jurymen was incompetent by reason of bias and prejudice.

1. The court described in the caption of the indictment is "The United States district court of the Territory of Montana for the second judicial district."

The court thus described is unknown to the Territory. We have no "United States district courts" here. Our courts are statutory courts, created by acts of congress, and, although exercising the jurisdiction of circuit and district courts of the United States, they cannot for this reason be denominated "district courts of the United States."

But the record accompanying the indictment shows that the indictment was found by the grand jury of the district court of the second judicial district of the Territory of Montana, which court had undoubted jurisdiction to find such indictment, and the wrong description of the court in the caption of the indictment does not vitiate it, especially so when the record shows that the court in which the indictment was found had jurisdiction of the offense.

2. It is contended that no offense is charged in the indictment, and this conclusion is arrived at by maintaining that no Indian agent, clerk or employee in the Indian service can under the statute be convicted of the crime of embezzlement, for the reason that congress has failed to make embezzlement a crime as to such persons, and, this being the case, that there can be no crime of conspiring to procure embezzlement to be committed. It is indeed true that no Indian agent, as such, can commit the crime of embezzlement. By virtue of his office, he has every opportunity to commit the crime, being charged with the duty of receiving and disbursing large quantities of goods for the government, but, for some inexplicable reason, congress has failed to make such person capable of committing the crime of embezzlement. But whether or not this indictment charges an offense

does not depend upon this consideration. The defendants are not charged with conspiring to procure an embezzlement to be committed, but are charged with a conspiracy to procure the United States to be defrauded. The charging part of the indictment, leaving out descriptions, etc., is as follows: " That Ensign, Upham and Giddings wickedly devising and intending to cheat and defraud the United States, fraudulently, maliciously and unlawfully did conspire, combine, confederate and agree together, to cause and procure certain goods, wares and merchandise to be embezzled, and disposed of for money, with the intent thereby to defraud the United States," and that, to carry out such conspiracy, they did certain acts which are set forth in the indictment. The word " embezzlement " may be left out of this charge, and yet it would be perfect and complete, and would then stand in this way: " That the defendants conspired and agreed together to procure certain goods *to be disposed of for money,* with the intent to defraud the United States." Do these latter words, which are the substance of the charge in the indictment, come within the statute upon which the indictment was founded. The language of the statute is as follows: " If two or more persons conspire, either to commit any *offense* against the laws of the United States, or to *defraud* the United States in any manner whatever, and any one or more of said parties to said conspiracy shall do any act," etc.

Under this statute, there may be two classes of conspiracies. First, a conspiracy to commit an offense against the laws, and, second, a conspiracy to defraud the United States in any manner, whether by a violation of the laws, or by any other fraudulent act.

Transposing the statute, it reads, " If two or more persons conspire to defraud the United States, in any manner whatever," and any one or more of such persons do any act to carry such conspiracy into execution, such persons shall be deemed guilty of a misdemeanor, etc.

And although a conspiracy to procure an embezzlement to be committed would be impossible for an Indian agent or employee, because there is no such crime for them, yet a conspiracy to procure the United States to be defrauded may be committed even by an Indian agent, and, turning to the charge in the indictment,

we find that this Indian agent, clerk and trader conspired and agreed together to procure the goods of the United States, to be disposed of for money, fraudulently, and intending thereby to cheat and defraud the United States. Such an act, if carried into execution, is a fraud upon the United States and within the statute.

It is contended that these defendants, or, at least, that the defendant Ensign is the servant, agent or trustee of the United States, and that these goods were rightfully in his possession, having been placed there by the government for certain uses and purposes, and that if Ensign disposed of these goods wrongfully, or converted them to his own use, he is guilty simply for a breach of trust, and only liable upon his bond for such acts. We may admit that Ensign was the agent and trustee of the United States, and that the goods come rightfully to his possession, and that he could not, therefore, be guilty of stealing such goods; yet all this does not in the least take away his power to enter into a conspiracy to defraud the United States by combining and confederating with others to fraudulently dispose of such goods. A breach of trust is a fraud, and a breach of trust accompanied by a conspiracy to fraudulently dispose of the goods intrusted to his care, is a fraud upon the United States, and directly within the statute. And so, admitting that the goods come rightfully to the possession of Ensign, he still had the power to enter into the conspiracy as charged.

3. The next question relates to the admissibility of testimony. The question objected to is as follows: " State what and how much was distributed at the first public distribution ? "

The goods had been deposited with Ensign, and whether they had been rightfully or wrongfully disposed of was the question. The object of the question propounded, and the other questions of like character, was to ascertain what part of such goods had been distributed to the Indians. If the Indians had not received the goods, and they had been disposed of, this was a circumstance properly given to the jury for consideration,— at least, it could not have prejudiced the defendants, and we can see no objection to permitting the question to be answered.

4. Insufficiency of the evidence to sustain a conviction. Neces-

sarily, all the evidence is not contained in the record.    The record does not preserve the appearance of the witnesses, their manner of giving their testimony, their interest, their hesitation, their eagerness or their feeling.    And it is the duty of an appellate court, if, looking upon the testimony preserved, it sees substantial proof to sustain the verdict, to do so, and that, in this record, there is testimony tending to prove the guilt of the defendants, I cannot doubt.

5. It is objected that the testimony of W. H. Clagett was incompetent and improper, and being thus, that its pernicious effect upon the jury could not be counteracted or destroyed by the court wholly withdrawing such testimony from the jury.    An examination of the record shows that the witness gave no testimony whatever that could in any manner affect the case or the jury. The witness was asked if the defendant Upham had made to him any statement or confession.    Objection was made, and during the pendency of the discussion the witness answered that he had; but what the statement was, or what the confession was, if any, never went to the jury, and they could not, therefore, by any possibility, have drawn any conclusion whatever from such testimony. And even the answer given was entirely withdrawn from their consideration, and if it had not been, we cannot see how or in what manner it could have prejudiced the defendants.

6. Objection was taken to many of the instructions given and refused, but we think the charge of the court substantially covers all the instructions applicable to the facts asked for by the defendants, and we see no error in the charge as given.

7. The remaining question relates to the motion for a new trial, based upon affidavits as to the competency of the juryman T. C. Warren.    Many affidavits were filed, showing that said juryman, after being summoned to serve for the term, in speaking of the cases known as the "Indian agency" cases, used such expressions as these: "If he found them the least guilty, he would cinch them plenty;" or, "I am on the jury in those cases, and will send up the defendants;" or, "I want to be on the jury; I would like to send up the defendants."    By counter affidavits these expressions are shown to have been made in jest and sport, or not at all, and that the juryman did not know the defendants in this par-

ticular case, and that he had no bias or prejudice whatever against these particular defendants, and but for the affidavit of the witness Simpson, the juryman might have been held competent. Simpson says the juryman said to him that he had formed an opinion in the case, but that evidence might remove such opinion. In his affidavit explaining his first affidavit he says the juryman referred to no particular case, but to the Indian agency cases generally. The present case being an Indian agency case, or known as such, we do not perceive that the explanation at all impairs the force of the first affidavit, and that affidavit, unexplained, would tend strongly to show that the juryman was biased or prejudiced in the case in which he afterward served as a juryman. This the juryman denied, but there is no disputing the fact that he had talked about the Indian agency cases, and in such talk had evinced bias or prejudice generally in those cases, and there is nothing to exempt this case from its operation.

We think, therefore, that the juryman was incompetent to serve in the case, and for this reason alone reverse the judgment and remand the case for a new trial.

SERVIS, J.  I concur in the opinion of the chief justice, except as to the sufficiency of the evidence, which I hold wholly insufficient to warrant a conviction.

*Judgment reversed.*

KNOWLES, J., dissenting.  I feel impelled to dissent from the opinion of the majority of the court upon the point of the competency of the juror Warren.  On his *voir dire* he swore that he had not formed or expressed an opinion as to the guilt or innocence of the defendants, and that he had no prejudice against them.

There is not an affidavit filed that shows that he had ever expressed an opinion as to the guilt or innocence of these parties, save, perhaps, Brown's, and Mr. Brown is thoroughly impeached. Except his remark to Hugal and Simpson, it appears that, in a joking manner, when rallied about being on the jury, and told that no honest man could sit on the jury ; that the lawyers wanted some one they could gull around ;  he said, according to some, if we

VOL. II.—23.

find them in the least bit guilty, we will sock them through; others testify that he said he would cinch them; but all swear that no particular cases were mentioned, and that they understood his expressions as a joke. In the affidavit of Simpson he does not say that he ever heard Warren say any thing about the innocence or guilt of the defendants. Simpson says: "We were speaking of the cases, and I asked him if he had not expressed himself; he said he had, but evidence would change his expression; I had heard he had expressed himself as to their guilt, but evidence would change it." Now, what was their expression? Were they to the effect that he believed them guilty or not guilty? What kind of an opinion was this? Was it made up from facts that he had heard? Did he know any thing about the cases? He swears, himself, he did not, and his affidavit is competent for this. In a subsequent affidavit Simpson says no particular cases were mentioned; only Indian agency cases generally. Hugal says that Warren was joking, as he understood; and if Warren did say as Hugal says, "If we find them the least bit guilty we will put them through," this is no expression that would disqualify the juror. Now, if such a juror is incompetent there are not fifty honest men in Montana that are competent for jurors in cases where Indian agents are charged with frauds against the general government.

The general character of Warren was put in issue by the prosecution, and the affidavits presented by them show that he is a joking and extravagant man, but that he is truthful and honest in all serious matters; and the affidavits of his fellow jurors show that he was among the last to agree to a verdict of guilty, and these affidavits are competent to show whether he had any bias or not. The affidavits all show that these expressions of Warren were regarded as jocular by those who heard them.

It must appear that a witness has formed or expressed such an opinion as will show that he has bias against the criminal to make him incompetent. I find no such bias.