TERRITORY, respondent, v. KENNEDY, appellant.

CRIMINAL LAW — *competency of juror* — *opinion and prejudice.* A. testified in April, 1880, upon his examination respecting his qualifications to serve as a trial juror in a criminal case that he had not formed or expressed any opinion as to the guilt or innocence of the defendant. He was accepted as a juror. After the verdict had been returned, it was proved that A. had stated before the trial in June, 1879, that the defendant was guilty and that he would hang him. A. then testified that he had forgotten these statements, and that he had no prejudice against the defendant when he was sworn to try the cause. *Held,* that A. was not a competent juror under the laws of this Territory.

*Appeal from Second District, Deer Lodge County.*

THIS cause was tried by GALBRAITH, J.

H. KNOWLES and J. C. ROBINSON, for appellant.

A. E. MAYHEW, district attorney, second district, for respondent.

CONGER, J. This is an indictment for murder, upon the trial of which the defendant was found guilty of murder in the second degree, and sentenced by the court to seventeen years in the penitentiary.

Appellant's counsel took various exceptions to the ruling of the court, and to the instructions by him given on the trial.

They also filed at the close of the trial affidavits of the incompetency of one of the jurors impaneled. And on these grounds moved the court for a new trial, which motion was by the court overruled. From the judgment of the court below an appeal was taken to this court.

The following appears of record in the transcript before us :

"And for further ground of new trial, said defendant sets forth that he did not have, and was not tried by a competent jury as required by law, in this : that one Henry Douglas, one of the jurors impaneled in said cause, testified on his examination as to his qualification as a juror ; that he had never formed or expressed an opinion as to the guilt or innocence of said defendant, and was thereby accepted by defendant as a juror ; but that said Douglas, after the homicide had been committed, and prior to the said trial, and upon hearing the facts and circumstances attending the same, expressed and in unqualified terms, his opinion as to defendant's guilt, to the effect, that he, said juror, believed defendant to be guilty of murder and ought to be hanged, and which said facts will appear by the affidavits of Patrick Mc-Andrew and James Pierce, and hereto attached ; and by the affidavits of the counsel for defendant, as to what said juror testified to at said trial.

" Hiram Knowles and J. C. Robinson, being duly sworn, say on oath, each for himself, that he is attorney for said defendant and was present in said court when the jury was impaneled in said cause, and attended thereto on behalf of said defendant.

" That one of said jurors who was so impaneled and who composed a part of said jury was one Henry Douglas, who after having been sworn on his *voir dire*, testified : that he had not prior thereto formed or expressed any opinion as to the guilt or innocence of said defendant, whereupon he was by defendant accepted as a juror by defendant.

" James Pierce, being duly sworn, says on oath that he is of lawful age, and resides on the Little Blackfoot river in Deer Lodge county, Montana Territory, and about ten miles from the

town of Deer Lodge ; that he is well acquainted with one of the jurors impaneled and sworn, and who was one of the jurors in the above-entitled cause, and before whom said defendant Kennedy was tried upon an indictment for the killing of one Thomas H. O'Connor ; that about the 9th day of May, 1879, said Henry Douglas and affiant had a conversation, in which said Douglas represented to affiant that he, Douglas, had then recently had a conversation with said O'Connor, said deceased, in relation to his, said O'Connor's, business affairs, and that he, said Douglas, represented to affiant that O'Connor had said to him, affiant Douglas, that if his, O'Connor's, creditors would let him alone, he would pay all up, and that said Douglas said he felt very sorry for said O'Connor.

" That about the 22d day of June, 1879, he, affiant, had another conversation with said Douglas, and which was the next day after said O'Connor was shot by said Kennedy, and said conversation was upon affiant, and said Douglas having heard of the said shooting of said O'Connor by said Kennedy, and that the facts attending said shooting were spoken of and talked of by said Douglas and said affiant; and that in said conversation said Douglas expressed sympathy for said O'Connor and a strong prejudice against said Kennedy, and spoke in very strong and vehement terms against said Kennedy, and to the effect that he, said Douglas, believed said Kennedy to be guilty in killing said O'Connor.

" And that about said time he, said affiant, heard a conversation of a very animated and loud and excited nature between said Douglas and one Patrick McAndrew, in relation to said matter of homicide, and that in said conversation, he, affiant, did not take particular note of what was said ; but that he could hear and understand enough thereof to know that said Douglas spoke in very strong and bitter terms against said Kennedy, and seemed very much prejudiced against him, said Kennedy."

"(Signed)        JAMES PIERCE."

Patrick McAndrew, being duly sworn, upon oath says : " That he is of lawful age, and that he is and ever since the 1st of June, 1879, has been acquainted with one Henry Douglas, being the

same Henry Douglas who sat upon and constituted one of the jurors in the above-entitled cause at the April term of said court, 1880, in the trial of said Kennedy on an indictment for the killing of Thomas H. O'Connor, deceased. That about the 22d day of June, 1879, affiant had a conversation with said Henry Douglas as to the homicide, and which said conversation was at the premises of one James Pierce on the "Little Blackfoot river," about ten miles from the town of Deer Lodge, and that said James Pierce was present during a part of said conversation and in the vicinity of affiant and said Douglas during the remainder thereof; and that in said conversation, he, affiant, and said Douglas talked at considerable length as to said homicide, and discussed the affairs between said O'Connor and said Kennedy, and said Douglas, in said conversation, was very much animated and excited, and expressed a very strong bias and prejudice against said Kennedy, and as to the entire of what he, said Douglas, then said, affiant cannot remember; but in no part thereof did said Douglas express any feelings than of hostility to said Kennedy, and sympathy for O'Connor's end, said without qualification, among other things, that he would hang him, said Kennedy, or any other man who would do what Kennedy did in shooting said O'Connor.

(Signed)          PATRICK McANDREW."

Be it remembered that on the 22d day of May, 1880, prior to making any ruling or decision on the motion of defendant for a new trial, the court called the juror, Henry Douglas the same juror named in the statement of defendant for motion for new trial, and affidavits of Patrick McAndrew and James Pierce, and proceeded to swear said Douglas to answer such questions as might be propounded to him touching his qualification as a juror in said cause and as touching the matter on hearing. That said Douglas proceeded to testify and answer such questions as were asked by the court, and which said questions and answers were as follows:

Question by the court: State your name. A. Henry Douglas.

Q. Are you the same Douglas who was a juror in the case of " *Territory* v. *Kennedy* " at this April term ?   A. Yes.

Q. Do you remember of having any conversation with Pierce and McAndrew as stated in the affidavit of McAndrew ?   A. I did ; at the time I went into the jury box I had forgotten all about this ; I had no opinion or prejudice one way or the other at the time of my examination on my *voir dire*, and during my service as juror in said cause.   After the trial was over, McAndrew came into the stable and spoke to me about it.   That was the first time I remember of the conversation referred to.

Q. State whether or not, on your examination for cause as a juror or during the trial thereof, you had any hostility against the defendant Kennedy ?   A. I had not.

Q. State whether or not you ever had any hostility toward Kennedy ?   A. I had no hard feelings or hostility against Kennedy in any shape, and never had any reasons to have any ; I was one of the jurors that voted for manslaughter.

Q. Did you ever have any feelings of prejudice against Kennedy ?   A. Never.

Q. (Pierce's affidavit read to witness Douglas.)   Do you recollect of having the conversation stated in Pierce's affidavit ?   A. I do; it is the same conversation.

Q. Did you recollect this conversation when you went to the jury box in said cause?   A. I did not at all.

Q. Are you positive ?   A. I am.

Q. Did you have feelings of hostility toward Kennedy ?   A. No; I never had ; did not know Kennedy.

Q. Do you recollect of ever having had the conversation referred to ?   A. I do now, part of it.

Q. Do you recollect, that in that conversation you expressed a strong prejudice against Kennedy ?   A. I can't say that I do.

Q. Did you recollect, at the time of your examination as a juror, of having previously expressed an opinion that you believed Kennedy guilty of killing O'Connor ?   A. I did not.

Q. Do you recollect now that you ever expressed the opinion that Kennedy was guilty of killing O'Connor ?   A. I believe in that conversation referred to, I did so state upon the account of it that

I heard; which was altogether different from what was the true account.

Q. Did you recollect while on the jury that you had expressed the opinion referred to, until it was called to your attention by McAndrew? A. I did not.

Q. Did you recollect at the time of your examination as a juror and while you were acting upon the jury and until your attention was called to it by McAndrew as you have stated ever having spoken in strong and bitter terms against Kennedy and exhibited prejudice against him? A. No, sir; I did not.

Q. State whether or not you were asked the question upon your examination *voir dire* as a juror in said cause — whether you had any bias or prejudice against defendant Kennedy? A. I think I was.

Q. What was your answer? A. I had none.

Upon conclusion of the examination by the court, counsel for the defense are asked if they had any thing to suggest relating to the examination of said witness or any cross-examination of witnesses.

Whereupon counsel for defense asked the court whether this inquiry is made upon the motion of the court or district attorney; and is informed that it is upon the motion of the court.

And this cause is now opened by the court for further argument of counsel   And no further argument is submitted.

Whereupon it is ordered by the court, that this statement be filed in this cause and constitute a part of the minutes of this court and of this cause, filed May 22, 1880.

Attest — GEO. W. IRVINE, *Clerk.*

That at the close of said examination said court announced that said Douglas was so examined at the instance of the court and not the district attorney. That prior to any questions having been asked said Douglas, defendant's counsel objected to said examination.

      (Signed)          WM. J. GALBRAITH, *Judge.*
*May* 22, 1880.

The court are referred by appellant to the following authori-

ties, to sustain their view of the case : *United States* v. *Upham*, 2 Mon. 170 ; Hill. on New Trials, 175 ; *People* v. *Plummer*, 9 Cal. 299 ; *The State* v. *Groome*, 10 Iowa, 316 ; *People* v. *Gehr*, 8 Cal. 359.

As ground of challenge to an individual juror the law is : "Having formed or expressed an opinion as to the guilt or innonence of the defendant of the crime charged in the indictment, or any material fact to be tried, if it appear that such opinion would prejudice or bias the mind of the juror." Crim. Pr. Act, § 286, subd. 11.

The Constitution of the United States provides that the defendant shall be allowed an " impartial trial by a jury."

It is insisted by appellant that the juror Douglas had expressed an opinion before the trial, which would have disqualified him from being a juryman in the cause, and been good ground for a challenge for cause, had he known the true state of facts.

It is, however, shown that the juror testified before the court that he had, at the time he was so examined, entirely forgotten his previous statements ; that he had no opinion, bias or prejudice toward the defendant.

Does this change the case and so make him an impartial juryman ? Giving due weight to the two affidavits, considering the length of time between the homicide and the trial, about nine months, and viewing the sworn statement of the juror in the light laid down for prisoners who are allowed to testify in their own behalf, there can be no doubt that the preponderance of the evidence is on the side of appellant.

In the case of *United States* v. *Upham*, 2 Mon. 170, affidavits were filed to show that a juror, after being summoned to serve for the term, in speaking of the cases known as the "Indian Agency" cases, used such expressions as these, " If he found them the least guilty he would cinch them plenty," or " I am on the jury on those cases and will send up the defendants," etc.

By counter affidavits it was shown that these expressions were made in jest or sport, and that the juryman did not know the defendants in the cause, and that he had no bias or prejudice in the case.

Upon an explanation of the case by the juror, the court say : " The present case being an Indian Agency case, or known as such, we do not perceive that the explanation at all impairs the force of the first affidavit; and that affidavit unexplained would tend strongly to show that the juryman was biased or prejudiced in the case, in which he afterward served as a juryman.

" This the juryman denied, but there is no|disputing the fact that he had talked about the Indian Agency cases, and in such talk had evinced bias or prejudice generally in those cases, and there is nothing to exempt this case from its operation."

" We think, therefore, that the juryman was incompetent to serve in the case, and for this reason alone reverse the judgment and remand the cause for a new trial."

Applying the above principles, and others consulted in this cause, we are of the opinion that Henry Douglas was not a competent and impartial juror; and as to the question whether the court exceeded his duties in calling said juror and examining him on oath or not, we express no opinion, but conclude that, from all the showing in the cause, the juror did not show himself to be such a juryman as is contemplated by the law. And for this reverse the judgment and remand the cause for a new trial.

*Judgment reversed and cause remanded.*