STATE, RESPONDENT, *v.* MOTT, APPELLANT.

(No. 1,946.)

(Submitted November 17, 1903.   Decided December 23, 1903.)

*Criminal Law—New Trial — Constitution—Impartial Jury— Prejudice of Juror—Statutory Construction—Affidavits— Appeal—Review.*

1.   Under Constitution, Article III, Section 16, an "impartial jury" must be composed of twelve impartial men; a number less than that will not suffice.

2.  The construction put upon a statute by the decisions of the courts of the state from which it is borrowed will not be followed where it appears that such decisions are founded on unsound reasoning, or will tend to the denial of a constitutional right.

3.  Penal Code, Section 2192, provides that a new trial may be granted to a defendant * * * "where the jury has * * * been guilty of any misconduct by which a fair and due consideration of the case has been prevented * * *." Held that the fact that a juror, when sworn, was biased and prejudiced against the defendant, which fact he concealed upon his voir dire examination, and which neither defendant nor his counsel discovered until after verdict, was ground for a new trial under the statute.

4.  Penal Code, Section 2051, providing that "no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety, provided it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him," is not unconstitutional as not granting to the accused in a criminal prosecution a "trial by an impartial jury."

5.  While it is imperative that the accused shall have a trial by an impartial jury, nevertheless, after verdict, error will not be presumed, and it is incumbent on the accused to make it appear affirmatively that he is entitled to a new trial by reason of having been deprived of this constitutional right; mere possibility, or even probability, that one of the jurors was incompetent is not sufficient to overthrow the verdict.

6.  In the absence of a clear showing of an abuse of discretion by the trial court in passing on a motion for a new trial based upon the alleged incompetency of a juror, the appellate court will not interfere.

7.  Where the record on appeal does not contain the judgment, the appeal is subject to dismissal on motion.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

Louis H. Mott was convicted of murder in the first degree. From the judgment and from an order denying his motion for a new trial, he appeals.   Affirmed.

*Mr. Joseph K. Woody,* and *Messrs. Woody & Woody,* for Appellant.

When the juror Coleman made the statements which are charged against him by the affidavits of Angst, Sherman and Cavanaugh, and then concealed them by false answers given on his examination on his *voir dire,* this constituted misconduct within the meaning of Subdivision 3, Section 2192, Penal Code, and the verdict should be set aside and a new trial granted.   (*United States* v. *Upham,* 2 Mont. 170; *Territory*

v. *Kennedy,* 3 Mont. 520; *Lane* v. *Scoville,* 16 Kan. 402; *State* v. *Morgan* (Utah), 64 Pac. 356; *State* v. *Mickle* (Utah), 70 Pac. 856; *State* v. *Wright* (Iowa), 84 N. W. 545; *People* v. *Turner,* 39 Cal. 370; *State* v. *Anderson,* 14 Mont. 547; *Rollins* v. *Ames* (N. H.), 9 Am. Dec. 79; *Nomaque* v. *People,* (Ill.), 12 Am. Dec. 157-159; *State* v. *Shelleday,* 8 Iowa, 508-509; *Jeffries* v. *Randall,* 14 Mass. 205-206; *Gaff* v. *State,* 155 Ind. 277, also reported in 80 Am. St. Rep. 235; *Rhodes* v. *State* (Ind.), 27 N. E. 686; *Smith* v. *State* (Ark.), 43 Am. St. Rep. 20; *State* v. *Nash* (La.), 13 So. Rep. 732, 734; *Sellers* v. *People,* 4 Ill. 412; *Vennum* v. *Harwool,* 6 Ill. 659; *Childress* v. *Ford,* 18 Miss. (10 S. & N.) 25; Maxwell, Cr. Procedure, p. 648; *Hill* v. *People,* 16 Mich. 357; *Johr* v. *People,* 26 Mich. 429; *State* v. *Taylor,* 64 Mo. 358; *State* v. *Wyatt,* 50 Mo. 309; *Heurie* v. *State,* 41 Tex. 573; *Sam* v. *State,* 31 Miss. 480; *Busick* v. *State,* 19 Ohio, 198; *Chartz* v. *Territory* (Ariz.), 32 Pac. 166; *Moncrief* v. *State,* 59 Ga. 470; *Romaine* v. *State,* 7 Ind. 63; *People* v. *Reece,* 3 Utah, 72; *United States* v. *Christensen,* 7 Utah, 26; 1 Bishop, Cr. Procedure, Sec. 949 b and note 1; 12 Ency. Pl. & Pr. pp. 456, 457; *State* v. *Reddy,* 44 Kan. 700; *People* v. *Plummer,* 9 Cal. 299; Constitution of Montana, Art. III, Sec. 16; Bishop on Crim. Proc., 3rd Ed., Sec. 113; *State* v. *Prescott,* 7 N. H. 287; *People* v. *Backus,* 5 Cal. 275; *People* v. *Thornton,* 74 Cal. 482; *People* v. *Branigan,* 21 Cal. 338; *Weis* v. *State,* 22 Ohio St. 486; *State* v. *Dolling,* 37 Wis. 396; *Lewis* v. *State,* 9 Smedes & M. 115; *Davis* v. *State,* 35 Ind. 496; *Westmoreland* v. *State,* 45 Ga. 225; *Oregon* v. *State,* 26 Miss. 78; 1 Bish. Cr. Procedure, Sec. 999 and note 3; *Black* v. *State,* 100 Ind. 357; *Zimmerman* v. *State,* 115 Ind. 129, 17 N. E. 258; *Rhodes* v. *State,* 128 Ind. 189, 25 Am. St. Rep. 429, 27 N. E. 886.)

*Mr. James Donovan, Attorney General,* for the State.

Our Section 2192 was taken from California, and after it had been construed by the supreme court of that state. By adopting said section we have, therefore, under a long line of

authorities of this court, adopted the construction placed upon it by the Supreme Court of California. (*Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057; *State* v. *Metcalf,* 17 Mont. 417, 43 Pac. 182; *State* v. *O'Brien,* 18 Mont. 1, 43 Pac. 1091; *Largey* v. *Chapman,* 18 Mont. 563, 46 Pac. 808; *Sharman* v. *Huot,* 20 Mont. 557, 52 Pac. 558.)

Another principle announced by this court in the cases above cited, pertinent to this case, and really determinative of it, is that where there is a conflict between the affidavits in support of a motion for a new trial, and those in opposition thereto, and the district court has passed on the motion, its action will not be disturbed unless an abuse of such discretion is clearly shown. (*State* v. *Burgess,* 8 Mont. 82; *State* v. *Anderson,* 14 Mont. 547.)

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

The defendant, Louis H. Mott, stands convicted of the crime of murder in the first degree. His motion for a new trial has been overruled. This appeal is from the order denying the motion, and from the judgment entered upon the jury's verdict.

The ground upon which the motion for a new trial was based is that the defendant was not tried by an impartial jury, in that one Coleman, when sworn as a juror, was biased and prejudiced against the defendant, which fact he concealed upon his *voir dire* examination, and which neither defendant nor his counsel discovered until after the verdict was rendered.

At the very outset of this inquiry we are confronted with this question: Is such disqualification of a juror in a criminal case ground for a new trial under our statute?

Section 2192 of the Penal Code declares: "When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial in the following cases only: (1) When the trial has been had in his absence, if the indictment or information is for a felony. (2) When the jury has received out of court any evidence other than that resulting

from a view of the premises, or any communication, document or paper referring to the case. (3) When the jury has separated without leave of the court, after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented. (4) When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors, which may be shown as provided in the Code of Civil Procedure. (5) When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial. (6) When the verdict is contrary to law or evidence. (7) When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly-discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable."

Is the phrase, "any misconduct of the jury by which a fair and due consideration of the case has been prevented," broad enough to comprehend the relief sought?

Section 2048 of the Penal Code provides: "Particular causes of challenge are of two kinds: (1) For such a bias as, when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this Code as implied bias. (2) For the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party, which is known in this Code as actual bias."

When it appears that a juror has actual bias—has prejudged the case—but denies the fact, qualifies as a competent juror,

and then enters into the trial with feelings of bitter hostility against the accused, it would seem that such action on his part strikes fundamentally at the composition of the jury.

A jury is an entity. By the Constitution of this state, one accused of crime is guarantied the right to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." (Article III, Sec. 16.) An impartial jury must be composed of twelve impartial men. A number less than that will not suffice. (*Territory* v. *Ah Wah and Ah Yen,* 4 Mont. 149, 1 Pac. 732, 47 Am. Rep. 341; *Gaston* v. *Babcock,* 6 Wis. 503.) If one of the jurors is incompetent because of actual bias entertained by him against the accused, and conceals such incompetency on his *voir dire,* this vitiates the jury as a whole. The accused being entitled to a jury of twelve impartial men, if he has but eleven, while the twelfth is hostile to him, he has not the impartial jury which the constitution and laws contemplate that he shall have.

In *People* v. *Plummer,* 9 Cal. 299, Chief Justice Terry, for the court, said: "One of the dearest rights guarantied by our free constitution is that of trial by jury—the right which every citizen has to demand that all offenses charged against him shall be submitted to a tribunal composed of honest and unprejudiced men, who will do equal and exact justice between the government and the accused, and, in order to do this, weigh impartially every fact disclosed by the evidence. This guaranty, long regarded as of inestimable value, would be entirely worthless if persons are admitted in the jury box who are influenced by passion, ill will, or prejudice, or who, by reason of having formed an opinion as to the merits of the case, will be incapable of deciding with perfect impartiality."

The accused must have such impartial jury from the beginning of his trial, and until the verdict is rendered. When, then, does the trial begin? In *People* v. *Turner,* 39 Cal. 370, it is said: "After an issue of fact is joined in a criminal case, every step thereafter taken for the purpose of a determination

of that issue in the court where the cause is pending, up to and including the verdict upon such issue, must be regarded as a step or proceeding 'arising during the course of the trial,' within the meaning of Section 440 of our Criminal Practice Act; hence any substantial error of the court upon any matter or question intervening between the joining of issue of fact and the rendition of a verdict thereon, and any misconduct of a juror, who participates in the verdict, from the time he is called in the case and sworn and examined on his *voir dire* up to the final act of rendering the verdict, is proper ground for a motion for a new trial under said section; and on appeal from an order of the court denying or granting such motion, based upon such grounds, the appellate court is confined to a review of the proceedings within these limits."

Certainly, after the jury is sworn, misconduct on the part of an individual juror is "misconduct of the jury." If, pending the trial, one of the jurors is bribed, would any one declare the jury to be an impartial one? At the commencement of the trial, twelve of those summoned as veniremen for the term are called into the jury box to answer as to their competency to serve as jurors in the case on trial. Suppose one qualifies under oath as competent, and, after being passed for cause, receives a bribe, and the jury is then sworn to try the case; would not such conduct on his part be misconduct of the jury? (*State* v. *Morgan,* 23 Utah, 212, 64 Pac. 356.) In principle, would the case be different, if, after the venireman was summoned, but before being sworn on his *voir dire,* he received a bribe to convict the defendant, and then, by concealing such fact, got himself accepted as a juror, and participated in the verdict? What substantial difference is there between the illustration just made and a case where the venireman, with malice against the defendant, perjures himself in order to secure a place upon the jury? Assuredly none will be found to say that such perjury is not misconduct on the part of the individual committing it. It may be argued that such misconduct is not misconduct of the juror, because he is not a juror until sworn to try the case;

that the misconduct is that of the venireman. Such reasoning may be narrowly correct, but gives slight comfort to one who loses his life or liberty by the act of one or more of his enemies sitting upon a jury; but it is not sound when one takes into consideration the requirements of the constitution. If a juror is guilty of such misconduct upon his *voir dire* as will vitiate the jury, no legal jury sits upon the case, for such misconduct runs through the case and permeates every action of the jury;' indeed, the very act of sitting on the jury is misconduct on the part of the disqualified juror. A jury, as an entity, is prejudiced only by the act or acts of its members. It may be likened to a chemical compound. If one of the ingredients is bad, it spoils the entire compound.

Counsel for the state rely upon the authority of *People* v. *Fair,* 43 Cal. 137, which construes a section similar to Section 2192, *supra.* In that case the court, in speaking of Section 440 of the Penal Code of California, said: "The statute declares that such a motion, when made, must be based upon one or more of the grounds in that section mentioned—'*in the following cases only*' is the expression—and it clearly excludes all other grounds whatsoever. Could the question of practice involved be quite regarded as *res integra* here, this mere reference to the terms of exclusion employed in the statute would be sufficient to dispose of the point; but in *People* v. *Plummer,* 9 Cal. 298, it was held by this court that under this statute an objection to the competency of a juror might be made by the prisoner for the first time after verdict rendered, and might be relied upon as a ground of motion for a new trial.

"We have carefully examined the elaborate and able opinion rendered in that case, and we find in it nothing whatever as to the construction or interpretation of Section 440 in the particular already referred to."

It may be remarked, in passing, that in *People* v. *Fair* we find nothing whatever as to the construction or interpretation of the phrase, "any misconduct of the jury by which a fair and due consideration of the case has been prevented." Nor

is there any reference in that case to *People* v. *Turner, supra,* although *People* v. *Plummer, supra,* is expressly overruled. Neither is the constitutional provision that the accused is entitled to an impartial jury noticed. The Supreme Court of Nevada followed *People* v. *Fair* in *State* v. *Marks,* 15 Nev. 33; but in *State* v. *Morgan,* 23 Utah, 212, 64 Pac. 356, the Supreme Court of Utah, speaking through Mr. Justice Baskin, in a well-considered opinion, construed a section similar to the one before this court, and expressly disapproved of the case of *People* v. *Fair* thus: "Among the personal safeguards contained in Section 12, Article I, Constitution, is the right of the accused in a criminal case to 'have a speedy public trial by an impartial jury.' Few, if any, more flagrant violations of that right, especially when the accused's life is in jeopardy, can be imagined, than the presence on the jury of one or more individuals having either actual or implied bias against the prisoner, and who had, under oath, falsely qualified as jurors. The construction placed upon the provisions of Section 4952, in the case of *People* v. *Fair,* 43 Cal. 137, and contended for by the attorney for the state in this case, if accepted, would destroy all remedies for such flagrant violation of the defendant's constitutional right to a trial by an impartial jury. Such a construction is untenable, not only for the reasons already advanced, but it is a maxim of general application, '*Ubi jus, ibi remedium.*' 1 Term R. 512; Coke Litt. 197; *Entick* v. *Carrington,* 19 Howell, St. Tr. 1066; Broom, Leg. Max. 147. And, when the wrong is the violation of constitutional rights, the legislature has no power to prohibit or substantially impair all remedies, as to do so would be a violation of the constitution."

In our view, the statute in question is not in conflict with the constitutional provision granting to an accused the right to an impartial trial. We think it is clear that the lawmakers manifestly intended to include in the statute such incompetency of a juror as we are discussing as a ground for a new trial, by the use of the words "misconduct of the jury by which a fair

and due consideration of the case has been prevented." This view is strengthened when we construe Subdivisions 3 and 4 together. It is manifest that the verdict must be reached by no means other than a fair expression of opinion on part of all the jurors.

In four cases this court has passed upon the sufficiency of affidavits filed in support of motions for new trials, viz.: *United States* v. *Upham,* 2 Mont. 170; *Territory* v. *Kennedy,* 3 Mont. 520; *Territory* v. *Burgess,* 8 Mont. 82, 19 Pac. 558, 1 L. R. A. 808; and *State* v. *Anderson,* 14 Mont. 541, 37 Pac. 1. But in none of these cases did the court pass upon the precise question now under consideration. When the case of *United States* v. *Upham* was tried, the Codified Statutes of 1871-72 were in force. Section 353, p. 242 thereof, provided: "The court may grant a new trial for the following causes, or any of them: First. When the jury has received any evidence, papers or documents, not authorized by the court, or the court has admitted illegal testimony, or for newly-discovered evidence. Second. When the jury has been separated without leave of the court, after retiring to deliberate upon their verdict, or have been guilty of any misconduct tending to prevent a fair and due consideration of the case. Third. When the verdict has been decided by means other than a fair expression of opinion on the part of all the jurors. Fourth. When the court has misdirected the jury in a material matter of law. Fifth. When the verdict is contrary to law or evidence; but no more than two new trials shall be granted for this cause alone." Section 353 is identical with Section 236, p. 252, of the Bannack Laws (First Legislative Assembly), and this statute was continued in effect until Section 2192 of the Penal Code was enacted. Under Section 353, above, the court granted new trials in the *Upham* and *Kennedy Cases,* but in the *Burgess* and *Anderson Cases* held the showing made by the defendant insufficient.

It is true that in the *Upham* and *Kennedy Cases* the statute provided as a cause for disqualification that of having "formed or expressed an opinion as to the guilt or innocence of the de-

fendant," if it appeared that such opinion would prejudice or bias the mind of the juror. The identical words quoted are not contained in the present Code, and the question then arises, are they included within the meaning of Subdivision 2 of Section 2048, *supra?* What is the substantial difference between "having formed or expressed an opinion as to the guilt or innocence of the defendant of the crime charged in the indictment, or on any material fact to be tried, if it appear that such opinion would prejudice or bias the mind of the juror," and the words "for the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party, which is known in this code as actual bias"? It is evident that the meaning of these two sections is practically the same. How are we to tell whether the juror has the existence of such a state of mind as will prevent him from acting with entire impartiality and without prejudice to the substantial rights of the defendant, except by judging from what he does and says? Certainly, if the juror has formed an unqualified opinion as to the merits of the cause, he may have actual bias. If he has expressed an opinion showing that he has actual bias against the defendant, it is tentative proof that his mind is not in such a free and just attitude as to enable him to "weigh the evidence in impartial scales." We are here only discussing the similarity of two statutes. As we shall presently see, certain opinions and expressions of opinions are not such disqualifications as the law will take notice of.

In the statutes in force prior to 1895 it is provided that "the court may grant a new trial for the following causes, or any of them," etc., while Section 2192 provides that "the court may * * * grant a new trial in the following cases only," etc. There is no substantial difference in the meaning of the two phrases. In the first one the provision that "the court may grant a new trial for the following causes, or any of them," as effectually excludes grounds not named as does the language

of Section 2192. The maxim, *"Expressio unius est exclusio alterius,"* applies. It thus appears that there is no radical difference between the statutes we have been discussing as to the point in issue.

But counsel for the state urge that we have no course to pursue, except to follow the case of *People* v. *Fair,* because Section 2192 was borrowed from California after it had been construed by the supreme court of that state, and therefore we must adopt the construction placed upon it by that court. We have shown that the particular portions of the section in question have been in our statutes beginning with the Acts of the first legislative assembly, and that under them this court has in at least four different cases recognized its power to grant new trials thereunder.

In *Territory* v. *Kennedy, supra,* the court cites with approval *People* v. *Plummer, supra,* but takes no notice of *People* v. *Fair.* It is said in *Oleson* v. *Wilson,* 20 Mont. 544, 52 Pac. 372, 63 Am. St. Rep. 639: "We admit 'that the construction put upon statutes by the courts of the state from which they are borrowed is entitled to respectful consideration, and that only strong reasons will warrant a departure from it;' * * * but we do not admit that such construction of borrowed statutes should prevail when not in harmony with the spirit and policy of our legislation and decisions;" and in the late case of *Ancient Order of Hibernians* v. *Sparrow,* 29 Mont. 132, 74 Pac. 197, Mr. Justice Holloway, speaking for the court, says: "This court will not blindly follow the construction given a particular statute by the court of the state from which we borrowed it, when the decision does not appeal to us as founded on right reasoning;" and, it may be added, this court certainly will not blindly follow a decision which appears to it as being founded on unsound reasoning, or which will lead to the denial of a constitutional right.

We agree with the Supreme Court of Utah: "The reasons assigned in the opinion in the case of *People* v. *Fair* for overruling *People* v. *Plummer* are not sound, but this overruled

case and the case of *People* v. *Turner* are supported by sound reason; and, as they are in harmony with the decisions of the Territorial Supreme Court before quoted, they should be followed, rather than the case of *People* v. *Fair.*" (*State* v. *Morgan, supra.*)

Having determined to our own satisfaction that the phrase "any misconduct by which a fair and due consideration of the case has been prevented" applies to a case like the one before us, we now come to the question whether the defendant in this case has made good his charge that the juror Coleman was incompetent. In support of his motion for a new trial, defendant filed the affidavits of Gustav Angst, Frank Sherman and D. J. Cavanaugh. It is unnecessary to quote the affidavits, or to discuss them in detail. It is sufficient to say that each one relates a different conversation in which Coleman is alleged to have been talking to others than the one who made the affidavit. Each one of the alleged conversations was at a time different from the others. Neither affidavit corroborates the other in any degree, except that (if such be corroboration) in each affidavit the juror Coleman is alleged to have said, in substance, that "the son of a bitch ought to be hung" (meaning Mott). All three of the affiants, to-wit, Angst, Sherman and Cavanaugh, state that the conversation was with other people, but are unable to tell who the other people were. Neither gives the name of any person present, other than himself and Coleman. Angst gives practically no context of the conversation alleged to have been overhead by him, while Sherman and Cavanaugh give no context at all. Coleman specifically denied the affidavits of Angst and Sherman. No reply was made to the affidavit of Cavanaugh, but the matters testified to by Cavanaugh are, in effect, denied by the affidavits filed in reply to those of Angst and Sherman. The case would be far different if Angst, Sherman and Cavanaugh had testified to a conversation held at the same time and place. All of Coleman's *voir dire* examination does not appear in the record. This much, however, appears: He said he had heard of the Mott case through the newspapers.

He was then asked if he had heard it discussed or had any conversation concerning it, and he answered, "Only hearsay." He was then asked if, from what he had heard of the case, or any knowledge he had gained of it in any way, he had formed or expressed an opinion as to the guilt or innocence of the defendant, and he said: "I cannot say that I have. I have no such opinion at this time." He further answered: "I have no prejudice or bias against the defendant in this case. I do not know of any reason why I cannot sit as a trial juror in this case, and render a verdict based upon the law and evidence given here in the trial of this case, and, if sworn as a juror, I will do so." In answer to a question propounded to him by counsel for defendant, he said: "I never formed any opinion. I do not form an opinion from newspaper reports. I have no bias or prejudice against the defendant."

Our statute (Section 2051 of the Penal Code) provides: "In a challenge for implied bias, one or more of the causes stated in Section 2049 must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of Section 2048 must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety, provided it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge must be oral, but must be entered in the minutes of the court or of the stenographer."

This section was passed in view of conditions which now obtain. The wide publicity given cases of a criminal nature by the newspapers leads to much idle and desultory public and private discussion. The people talk of the alleged crime, and form opinions thereon, contemplating that the reports current may not be based upon a true state of facts. The opinions thus formed are usually indefinite and not deeply impressed upon the mind. Men in general are willing to set aside such lightly

formed opinions, and to rationally decide upon the evidence adduced by the solemn processes of the law. Any other rule than that expressed in the statute would seriously hinder the courts in the disposition of criminal business.

This statute is constitutional. (*Territory* v. *Bryson,* 9 Mont. 32, 22 Pac. 147; *State* v. *Shearin,* 12 Mont. 539, 31 Pac. 543, 33 Am. St. Rep. 600; *State* v. *Russell,* 13 Mont. 164, 32 Pac. 854; *State* v. *Marlin,* 29 Mont. 273, 74 Pac. 725.)

It does not appear from the *voir dire* examination of the juror that his opinion was founded upon anything else than from what he had read in the newspapers, or upon public rumor. As above noted, in reply to the question as to whether he had heard the case discussed, or had any conversation concerning it, he replied, "Only hearsay." It was incumbent upon the defendant's counsel, in testing the competency of the juror, to have asked as to what this hearsay consisted of. (*Territory* v. *Bryson, supra.*) They had an opportunity to ascertain fully the nature of the hearsoy, as well as the condition of the juror's mind with reference thereto. When they knew he had heard the case discussed, and had himself conversed about it, which his answer to the question clearly indicated, they should have pursued the investigation further, to the end that they, as well as the court, might be informed as to the true state of facts. The question before the court was, what was the state of the juror's mind at the time he was being examined? In testing him, it was proper to investigate the sources of his knowledge, to inquire as to the statements made by him concerning the case, as well as upon all other matters germane to the inquiry. The juror, upon his *voir dire,* while admitting some knowledge concerning the case, as well as conversations had, swore that he had no opinion as to the guilt or innocence of the defendant at the time he was being examined, and further said: "I do not know of any reason why I cannot sit as a trial juror in this case, and render a verdict based upon the law and evidence given here in the trial of this case, and, if sworn as a juror, I will do so." He thus clearly qualified himself, under

the statute, "for, no matter from what source the juror formed his opinion, unless it be from conversation with witnesses or reading reports of the testimony, it must be fixed and unqualified, in order to disqualify him, which was evidently not the case with the juror in hand." (*Territory* v. *Bryson, supra.*)

The only attempt made by defendant's counsel to impeach the competency of the juror is by means of affidavits tending to show that at some time prior to the trial he had expressed an opinion showing bias against the accused. No attempt is made to show that the hearsay testimony concerning which the juror testified was obtained from the witnesses in the case, or from reading any official report of the testimony. Instead, mere skeleton affidavits were filed. Both these and "the circumstances should be closely scanned. They doubtless received such scrutiny from the learned district judge." (*State* v. *Anderson, supra.*)

In the *Burgess Case* it was said: "The affidavit was *ex parte,* while the juror was examined openly in court, and was interrogated by counsel for defendant as well as by the court. The court had a full opportunity to see the demeanor of the witness [juror], as well as hear his words, and from both was doubtless convinced of the sincerity and truth of his statement; otherwise the court would not have overruled motion for a new trial." (*State* v. *Anderson,* 14 Mont. 541, 37 Pac. 1.)

In this case the district judge heard the *voir dire* examination of the juror; observed his demeanor while testifying, as well as during the trial of the case; passed upon the affidavits filed on behalf of the defendant and on the part of the state; and overruled the motion for a new trial. In the light of the statute and of the showing made upon this appeal, we cannot say the court erred.

While it is imperative that the accused shall have a trial by an impartial jury, the mere possibility or even probability that one of the jurors was incompetent is not sufficient to overturn the verdict. After verdict the accused has the laboring oar. "Error will not be presumed. It must be affirmatively

made out." (*People* v. *Scott,* 56 Mich. 154, 22 N. W. 274.) A trial having been had under the rules prescribed by law, the presumption is in favor of its validity.

In passing on a motion for a new trial based upon the alleged incompetency of a juror, the lower court is called upon to exercise a sound legal discretion. In the absence of a clear showing of error in this regard, the appellate court will not interfere. (*Territory* v. *Bryson, supra; State* v. *Anderson, supra; State* v. *Martin, supra; State* v. *Schnepel,* 23 Mont. 523, 59 Pac. 927; *People* v. *Biles,* 2 Idaho (Hasb.), 114, 6 Pac. 120; *Carson* v. *Dellinger,* 90 N. C. 226.)

The record in this case is very imperfect. Section 2281, Penal Code, expressly provides how the record on appeal shall be perfected, and what it shall contain. The appeal in this case probably would have been subject to dismissal, under the statute, had the proper motion been made on part of the state. As it is, no judgment appears in the record.

We are of the opinion that the appeal from the judgment must be dismissed, and that the order denying the motion for a new trial should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the appeal from the judgment is dismissed, and the order denying the motion for a new trial is affirmed.