STATE, RESPONDENT, *v.* ANDERSON, APPELLANT.

[Submitted July 5, 1894. Decided July 9, 1894.]

CRIMINAL LAW—*New trial—Misconduct of juror.*—A new trial, sought upon the ground of alleged misconduct of a juror in using improper language in the jury-room, is properly denied when such misconduct is attempted to be shown by the affidavit of a third person to whom the juror had stated the circumstance, particularly where the use of the language is denied by the affidavit of the juror himself and six of his fellow-jurors.

SAME—*Same—Prejudice of juror.*—An expression by a juror, after a verdict of guilty, to the effect that if defendant got a new trial and was turned loose he would shoot him like a dog, cannot be taken as proof, on motion for a new trial, that he had an opinion and was prejudiced when impaneled as a juror, where the juror, by affidavit, states that the feeling so expressed was formed upon hearing the evidence on the trial.

SAME—*Same—Prejudice of juror.*—The denial of a motion for a new trial, based upon *ex parte* affidavits, to the effect that a juror had stated before the trial that defendant was a tough citizen, and that he had made the unqualified assertion that defendant ought to be hung, but without giving any details, or the context of the conversation, and there being nothing to indicate what affiant's notion of the word "unqualified" was, cannot be held to have been an abuse of discretion, where the juror had testified on his *voir dire* examination that he had no prejudice against defendant and had formed or expressed no opinion as to his guilt or innocence, and was absent from the state so that his counter-affidavit could not be obtained upon the hearing of the motion.

SAME—*Same — Newly discovered evidence.* — Newly discovered evidence is not ground for a new trial where its only tendency is to contradict testimony, given by a witness for defendant, to the effect that defendant had given him details of the killing at a time in the night when only a participant could have known of them, and which was the only notice he had received that night, by showing that he had received information of the crime on the same night from another person.

SAME—*Same—Newly discovered evidence.*—A new trial in a capital case will not be granted upon the ground of newly discovered evidence which consists of an unsworn statement to the judge, made by an accomplice, to the effect that the defendant was innocent, that he had committed the murder himself, and that he had lied on the trial, where such statement was made after the state had accepted his plea of guilty in the second degree and shortly before the date set for defendant's execution, and was inconsistent with the facts otherwise proved in the trial, there being no showing that his testimony on the second trial would be different from that given on the first.

*Appeal from Sixth Judicial District, Park County.*

THE defendant, Robert A. Anderson, informed against as Robert Field, was convicted of murder in the first degree. Defendant's motion for a new trial was denied by HENRY, J. Affirmed.

*Sidney Fox,* and *M. R. Wilson,* for Appellant.

*County Attorney H. J. Miller,* and *E. C. Day,* for the state, Respondent.

I.   The declarations of the juror Rich as to what occurred in the jury-room are inadmissible to impeach the verdict. (*State* v. *Richmond,* 42 La. Ann. 299; *State* v. *McNamara,* 100 Mo. 100; *Palmer* v. *State,* 65 N. H. 221; *People* v. *Stimer,* 82 Mich. 17; *Devere* v. *State,* 5 Ohio Cir. Ct. 378; 12 Am. & Eng. Ency. of Law, 378, and cases cited.)   Besides, these occurrences are all denied in the affidavits of the jurors.   And where the evidence as to misconduct is conflicting, the decision of the trial court will not be disturbed. (*People* v. *Anthony,* 56 Cal. 399.)

II.   The fact that, after a verdict has been rendered, the accused ascertains for the first time that before the jury was impaneled a juror had formed and expressed an opinion as to to his guilt, is not a ground for a new trial under the Montana statutes.   The right to move for a new trial is purely statutory. (*State* v. *Fry,* 10 Mont. 407.)   The misconduct referred to in section 354, division 3, of the Compiled Statutes is only that which occurs after the jury has been impaneled and sworn. (*People* v. *Fair,* 43 Cal. 137, overruling *People* v. *Plummer,* 9 Cal. 298; *Leeper* v. *State,* 29 Tex. App. 63, overruling *Breckenridge* v. *State,* 27 Tex. App. 518, and other cases; *State* v. *Marks,* 15 Nev. 33.)   Assuming that the affidavits are sufficient to bring the case within those in which the court have the power to grant a new trial, it was still a matter within the discretion of the court, which has not been abused. (1 Thompson on Trials, § 116; *State* v. *Harrison,* 36 W. Va. 729; *Hill* v. *State* (Ga., Feb. 13, 1893); *Ellis* v. *State,* 92 Tenn. 85; *Black* v. *Territory,* 3 Wyo. 313; *Carthaus* v. *State,* 78 Wis. 560.) But the question is not open in this state, as our supreme court has already held that where the evidence is conflicting as to the

disqualifying expressions, the matter rests in the discretion of the trial court. (*Territory* v. *Burgess*, 8 Mont. 57.) And in *Spies* v. *People*, 122 Ill. 1, the court says: "It is a dangerous practice to allow verdicts to be set aside upon *ex parte* affidavits as to what jurors are claimed to have said before they were summoned to act as jurymen. The parties making such affidavits submit to no cross-examination, and the correctness of their statement is subject to no test whatever." (Followed in *State* v. *Peterson*, 38 Kan. 204.) The affidavits fail to show that the prisoner or his counsel did not have knowledge of such disqualifying fact when the juror Rich was accepted. This is an indispensable requirement. (1 Thompson on Trials, 122, note 1.)

III. The court did not err in overruling defendant's motion on the ground of the newly discovered evidence set forth in the affidavit of George B. Scott. The affidavit fails to show when this evidence was discovered, what diligence was used to procure it, or that it could not have been produced on the trial had the parties desired it. (16 Am. & Eng. Ency. of Law, 564, et seq.; *Stoakes* v. *Monroe*, 36 Cal. 383; *People* v. *Nelson*, 85 Cal. 421; *Caruthers* v. *Pemberton*, 1 Mont. 111.) Newly discovered evidence as a ground for new trial is regarded with disfavor, and showing must be strict. (*Baker* v. *Joseph*, 16 Cal. 174; *Arnold* v. *Skaggs*, 35 Cal. 684.) Newly discovered evidence must be shown to be material. (*Arnold* v. *Skaggs*, 35 Cal. 684; *Stoakes* v. *Monroe*, 36 Cal. 383.) If we can go to the record of the evidence on the trial, we will find that this evidence, in so far as it is material, would, if believed, impeach the testimony of the defendant and his own witness Atkins. This of itself is sufficient to justify the court in rejecting it. (*State* v. *Stain*, 82 Me. 472; *State* v. *Johnson*, 72 Iowa, 393; *People* v. *McCauley*, 45 Cal. 146.) Newly discovered evidence going only to a single circumstance and not to the main issue is not in itself sufficient to warrant the granting of a new trial. (*Statham* v. *State*, 84 Ga. 17.) The granting of a new trial on the ground of newly discovered evidence is entirely within the discretion of the trial court, which will not be reviewed except in a clear case of abuse. (*State* v. *Morris*, 109

N. C. 820; *Carson* v. *Dellinger*, 90 N. C. 226; *Hobler* v. *Cole*, 49 Cal. 250.)

IV.   The court did not err in overruling defendant's motion on the ground of Mortimer's contradictory statements made since the trial.   The fact that a witness since the trial has made statements contradictory of his former testimony is not a ground for new trial.   (*State* v. *Workman*, 38 S. C. 550; *Lasseter* v. *Simpson*, 78 Ga. 61; *Attaway* v. *State*, 56 Ga. 363.)   The court will not set aside a verdict obtained by perjury, unless the witness has been convicted of perjury.   Courts do not look with favor upon this class of newly discovered evidence, especially where the evidence is that of the perjurer.   (*Dyche* v. *Patton*, 3 Jones Eq. 332; *Holtz* v. *Schmidt*, 12 Jones & S. 327; *People* v. *McGuire*, 2 Hun, 269.)   It must also be shown that the witness will testify differently on the next trial, but there is no one connected with this case who has been found willing to swear that the witness Mortimer will testify differently on the next trial.   (*Spillars* v. *Curry*, 10 Tex. 143.)

*Henri J. Haskell, attorney general*, also for Respondent.

DE WITT, J.—The defendant was convicted of murder in the first degree.   He appeals from the judgment.   His motion for a new trial was denied.   He now asks us to review the alleged causes for a new trial which he set up on that motion. We will examine them in their order:

1. Misconduct by the juror Rich: It is set forth by the affidavit of S. M. Nye that he had a conversation with juror Rich after the trial, in which said Rich said to him substantially as follows: "When we went out, four of the jury were in favor of acquitting the defendant.   I told them that if we were going to acquit the defendant, or have a hung jury, that we had better send up and have our Winchesters brought down to us, and nave them loaded to the muzzle; that, if we did not convict, we dare not face the people without our guns."   The affidavit of a juror as to his misconduct in the jury-room is not to be taken to impeach his verdict.   (See cases cited in *Gordon* v. *Trevarthan*, 13 Mont. 387; 40 Am. St. Rep. 452.) If what a juror says on oath, by affidavit, is not to be taken to impeach

his verdict, it would seem, *a fortiori*, that what another person says that the juror said should not be taken for such purpose. But, if the Nye affidavit were to be considered, Rich denied by affidavit that he used such language, and six of his co-jurors, by affidavit, deny that he (Rich) had used any such language in the jury-room as was attributed to him by the Nye affidavit. (*Territory* v. *Burgess*, 8 Mont. 57.)   The decision of the court, in denying a new trial on this ground, was unquestionably correct.

2. The defendant presented affidavits that recited that, since the trial, juror Rich had said: "If that man gets a new trial, and is turned loose, he shall never get out of this town alive. I will shoot him down with my own hand, like a dog." Rich, in his affidavit used on the hearing, does not deny that he made use of these expressions, but he says that they were all made since the verdict was rendered, and that his opinion so expressed was formed by hearing the evidence adduced at the trial, and that when he was impaneled as a juror he had no bias or prejudice whatever. These expressions are urged as showing prejudice by the juror Rich. "Prejudice" means "prejudgment"; "judgment beforehand." Rich's statements certainly show his opinion or judgment as to defendant's guilt. His verdict also showed that, as it ought. But the expressions do not show his prejudgment or prejudice. The showing is uncontradicted that this was the juror's after judgment—his opinion after the trial— and formed upon hearing the evidence. His opinion of the guilt of the defendant, after the trial, and after verdict of guilty, cannot be taken as proof that he held such opinion before the trial, in the absence of any showing that he did hold such opinion, and in the presence of the express showing that he did not hold any such opinion before the trial. This ground for new trial was also properly overruled by the court.

3. Disqualification of the juror Rife, by reason of expression of opinion, showing bias, made before the trial, is the next ground for new trial presented. Rife was a juror called on open *venire* after the regular panel was exhausted. W. Altimus makes affidavit that he was in the sheriff's office one day after the killing of deceased, and before the trial; that Rife came in, and "when informed that Field, the defendant, was

in jail, charged with the murder, he said, 'You had better watch him pretty close, for he is a tough citizen,' or words to that effect." Rife has had no opportunity to deny the matter set up in this affidavit since it was made. He has been absent from the state, and, in the haste of making this motion for a new trial, he could not be reached. But Rife did testify under oath, on his *voir dire* examination, and subject to cross-examination as to details, that he had no bias or prejudice against defendant, nor had he formed or expressed any opinion as to the guilt of defendant. The district court had before it the oral examination of Rife, and the *ex parte* affidavit used against him. This expression alleged to be used by Rife does not tend to show bias or prejudice, or an opinion of the guilt or innocence of the defendant. (*Territory* v. *Burgess*, 8 Mont. 57.) Because a juror may have a general opinion that a defendant is a "tough citizen" is not evidence of the possession by such juror of the opinion that the defendant is guilty of the particular crime with which he stands charged; especially when the juror testifies, under examination and cross-examination, that he knows nothing about what purport to be the facts of the case, and has no opinion as to the guilt or innocence of defendant. Most bad men have a reputation in the community in which they live. A knowledge of such reputation, coupled with ignorance of all the alleged facts of the offense charged against defendant, and an absence of all opinion, bias, or prejudice, is not a disqualification of a juror.

Again, as to juror Rife, we have the affidavit of H. H. Ash, in which he says "that he is personally acquainted with, and well knows, a certain Frank Rife, who was a juror on the trial of the above-entitled action, upon which trial defendant was on the eighteenth day of May, 1894, convicted of the killing of one Emanuel Fleming, at the city of Livingston, on the twentieth day of April, A. D. 1894, and a verdict of murder in the first degree brought in and rendered; that on or about the tenth day of May, 1894, and before said Rife was summoned as a juror in said cause, affiant had a conversation with said Rife, in which conversation said Rife made the unqualified assertion, 'Field ought to be hung.'" Upon affidavits of this nature, Mr. Justice De Wolfe perti-

nently remarked in *Territory* v. *Burgess*, 8 Mont. 57, as follows: "In this connection, it is not improper to say that the temptation is strong on the part of a defendant who has been convicted in a criminal case, and particularly on the grave charge of murder, to try and obtain a new trial on the two grounds alleged in this case—of misconduct of the jury, and incompetency of a juror by reason of having expressed an opinion in the case. These, when the facts clearly establish the misconduct in the one case, or the expression of an opinion by a juror in the other, are plainly sufficient grounds for granting a new trial. But in view of the temptation on the part of the defendant, and also on the part of his friends, to obtain a rehearing in the case of conviction, and in view, also, of the facility with which affidavits for this purpose can be obtained, courts should closely scan affidavits procured for that end, and, unless convinced of their correctness, should not be influenced by them in granting a new trial; and this, we think, has been the action of the district court in the present case." As above noted, there was no opportunity to obtain Rife's statement as to the truth of the Ash affidavit. The motion for new trial was necessarily hurriedly prepared, and heard less than twenty-four hours before the time set for the execution of the defendant. Rife was out of the state, and could not be reached. Under such circumstances there would be a great temptation to a friend of the defendant to make such an affidavit as the Ash affidavit. Both the affidavit and the circumstances should be closely scanned. They doubtless received such scrutiny from the learned district judge. He had heard Rife's oral examination on his *voir dire*, in which he stated that he had not formed or expressed any opinion as to the guilt of defendant. Against that, he had this affidavit, made under the circumstances that it was, and wholly wanting in any details. The affiant does not say where he and Rife were when Rife made the statement, or who, if any one, was present, or whether any one was present. He wholly omits all the context of the conversation in which Rife is alleged to have made the statement. It is not stated what called forth the remark by Rife. Affiant simply says that Rife made the "unqualified assertion." We have no means of knowing what affiant's notion of the word

"unqualified" was. If the facts and circumstances, and surroundings of the parties, the context of the conversation, what led to the remark, and the occasion for it, had been given in the affidavit a reviewing court would have some grounds upon which to determine whether the statement alleged to have been made by Rife was "unqualified," and whether the district court abused its discretion in discarding this affidavit, as against the oral examination of the juror.

It is said in the Burgess case: "The affidavit was *ex parte*, while the juror was examined openly in court, and was interrogated by counsel for defendant, as well as by the court. The court had a full opportunity to see the demeanor of the witness, as well as to hear his words, and, from both, was doubtless convinced of the sincerity and truth of his statement; otherwise the court would not have overruled .the motion for new trial. In this we cannot say that any error or abuse of judicial discretion was committed." If such skeleton affidavits are to be entertained by an appellate court, on which to grant a new trial, after the district court (with its near view of all the circumstances, and its personal inspection of the juror upon his examination) has discarded them, then all the murderer's friends need do is to watch for the absence of some juror, on the verge of execution, and make such an affidavit as the one before us. We think this case comes within the doctrine of the Burgess case. (*Territory* v. *Burgess*, 8 Mont. 57.) In that case, it is true, the alleged offending jurors made a counter-showing, under oath, on the motion for a new trial. That element in the Burgess case is absent from the case at bar. But we are of opinion that this absence is compensated for in the fact that the motion for new trial here was made upon the eve of the execution of defendant, when Rife could not be obtained to make a counter-affidavit, and the fact that the district judge had the oral *voir dire* examination and cross-examination of Rife, and the further fact of the character of the affidavit itself, as shown above. We have thus satisfied ourselves that this ground for a new trial was properly overruled by the district court.

4. Newly discovered evidence is also set up as a ground for a new trial. William Mortimer testified upon the trial that

he and defendant Field together killed the deceased. Mortimer was the only eyewitness of the killing who testified to the fact on the trial. He described it, and the movements of defendant and himself, before and after the killing, in great detail. The murder was committed about 9:30 P. M., in the outskirts of the city of Livingston. Shortly after the assault upon deceased, Field offered himself, and was accepted, as a member of the sheriff's posse. He went out on horseback up the river. He called upon the people at several houses, without arousing them. He awakened one Charles Atkins about three miles from Livingston. Defendant testified to this himself. Defendant called Atkins as a witness. Atkins testified that Field aroused him, at his home, at 1:30 A. M., following the killing of deceased. Atkins testified that Field told him, to some extent, how the killing was done. The state has taken the position that, according to Atkins' testimony, Field told Atkins more details as to the killing than any one could have known at that time, unless he had been a participant in the assault. It seems that this matter told strongly against defendant. On motion for new trial comes George B. Scott, and makes affidavit that on the same night, between one and two o'clock A. M., he aroused Atkins, and informed him what had occurred, and what was known of how it was done. But he does not state what he knew then, or what he told Atkins, of how the murder was done. Atkins had testified that Field's call was the only notice he had received that night of the murder. Scott's affidavit, as above noted, was presented on the motion for new trial as newly discovered evidence. It is nothing more than an attempted contradiction of Atkins (Field's own witness) in respect to Atkins' statement that his only information of the murder on that night was from Field. This is not a ground for a new trial, and it was properly so held by the district judge.

5. Other alleged newly discovered evidence was presented as a ground for granting the motion for a new trial, which we will now consider: As observed above, William Mortimer was the only witness for the state who testified as an eyewitness of the fatal assault upon the deceased, Emanuel Fleming. His testimony was direct, positive, and minutely detailed as to the

killing of Fleming by himself and Field. No one in behalf of defendant has ever contended that the evidence was not sufficient to sustain the verdict. No motion for a new trial was made upon the ground that the verdict was contrary to the evidence. The time to make such motion was allowed to pass. It is appropriate to state here that in our opinion the evidence is amply sufficient; and by this we mean, not only the testimony of Mortimer, the accomplice, but also all the facts and circumstances, and the conduct and admissions of he defendant himself. On May 22d judgment was rendered, sentencing defendant to be executed June 22d. On June 17th the witness Mortimer stated to the Honorable Frank Henry, judge of the district court, that he (Mortimer), alone, murdered Fleming. He made this statement to Judge Henry orally. He also gave to the judge the following writing:

"LIVINGSTON, MONTANA, June 17, 1894.

"I, William Mortimer, hav swor to lies on the stand in the district cort on the trile of Bob Anderson who was on trile for the murder of Emanul Fleming. I was the man that did the dede I was promist by John Hogan that if I wold turn stats evedance that the dores of the county jale wold be throw open and I wold go forth a free man and also promist by County Attorney Miller that not a hair on my head wold be harmed I murdered Fleming unaded and alone Anderson did not now any thing about it He is as inocent as a babe unborne. I jave had enough of truble about the afair and do not wish to kep my secrit longer. If the govnor will not turn Anderson lose I will call on the people of Park county to do it, as Robert Anderson is as inocent of the crime as the govnor is. I have bin lead to what I did through Hogan and did swere Robert Andersons life away but I have come to my sences I think before it is to late.        WILLIE MORTIMER."

This writing was given by Judge Henry to defendant's counsel. The writing, and the statement made orally by Mortimer to Judge Henry, are made the basis of a motion for a new trial on the ground of newly discovered evidence.

The argument of defendant is that this "confession," as we will call it for the sake of a name, is newly discovered evidence

that Mortimer lied in a vitally material matter upon the trial. The state replies that it was the contention of defendant on the trial that Mortimer was lying, and therefore this alleged newly discovered evidence is only cumulative or impeaching, and hence not a ground for a new trial. We think we may pass this contention of counsel, and place our decision upon another ground; that is, that the alleged newly discovered evidence in this case was not sufficient, under the facts and circumstances developed, to reverse the decision of the district court, and direct it to grant a new trial, even if it were conceded that such evidence was not simply cumulative or impeaching. If, instead of such a showing as we have in this case, there were presented to a court on motion for a new trial a showing whereby it clearly appeared, to the satisfaction of a reasonable judicial mind, that the principal and only eyewitness for the state, upon whose testimony, without corroboration, the conviction depended, had lied in his material testimony, we are not prepared to say that the court hearing such motion should not grant the same.

But, as above remarked, passing this matter, we will decide this ground for a new trial upon our opinion that the district court should be sustained by reason of the insufficiency of the alleged newly discovered evidence, in whatever light it may be viewed. We will state our reasons for this opinion; but first it may be observed, in passing, that the state makes a showing on the motion, by affidavit, that Mortimer's statement, as given in evidence on the trial, was given voluntarily. In Mortimer's written statement of June 17th he says that he swore to lies on the trial. But the only lie which he claims he was guilty of was his connecting Field with the murder. He still leaves himself in the case as a participant. He still leaves in the case the great mass of details and circumstances, aside from the actual participation by Field in the fatal assault. In fact, by his statement of June 17th, Mortimer simply lifts Field out of the case for the few minutes while the actual striking and shooting took place. These men were intimate. They lived together. They were companions. Mortimer is a boy of seventeen. Field is twenty-eight. They had been living together in a cabin a few miles from Livingston. They came

to town this afternoon separately, and each put his horse in
the stable belonging to Mortimer's mother. They went down
town together, and then returned to the Mortimer house.
They were there shortly before the killing. Defendant said
he was going to the house˜of a relative near by. Mortimer
invited him to return, and stay all night. After the killing,
Mortimer got Field's horse and rode off to the cabin where
they had been living. Field knew that Mortimer had taken
the horse, and followed him directly to the cabin. But we do
not think it is necessary, in this opinion, to state the great
mass of testimony, which covers several hundred pages of the
record. Counsel, in an extended and able argument, have
presented every thing which seemed to them important. We
have listened attentively, and have studied this case thought-
fully, as becomes the gravity of the result of an affirmance;
and, without writing down the analysis which has brought
us to the result, we feel ourselves wholly justified in say-
ing that all the facts, details, circumstances, and the vast
*minutiæ* of the case, are entirely consistent with the truth of
Mortimer's testimony on the trial—that he and Field killed
Fleming. The more we analyze the case the stronger grows
confirmation of this view. On the other hand, the facts, de-
tails, circumstances, and *minutiæ* are totally inconsistent with
the truth of Mortimer's confession of June 17th. We could
not construct a narrative of the case, as we find it in that part
of the evidence which is left untouched by the confession of
June 17th, which would make a story consistent with Morti-
mer alone being the murderer. It is thus that the alleged
confession appears to us, in reading the whole case, in cold and
unsympathetic print. Judge Henry arrived at the same result
as we do, but he had the living witnesses. He even had the
confession of Mortimer by word of mouth and personal pres-
ence. We do not hesitate to say that we cannot disturb his
decision.

It may be further observed, as confirming our view, that the
district court should be sustained, that there is no showing that
Mortimer would testify on another trial differently from that
which he testified on the first. No one says that he would.
The only suggestion that he would is his statement made to

Judge Henry, not under oath.    It is proper to observe another fact in this case.    Field had been convicted and sentenced. Mortimer had pleaded guilty of murder in the second degree. His plea had been accepted.    He was awaiting sentence, and Field was within a few days of execution.    Then Mortimer promulgates this statement of June 17th.    It looks much as if he considered that he had made himself safe from a sentence for murder in the first degree, and then used one more effort to save his accomplice.    If a new trial is to be granted on such showing there is nothing to prevent Mortimer from playing battledore and shuttlecock with the Field case for all time.    The Mortimer confession came to the district court in such questionable shape, and so utterly discredited by every thing in the case, that we cannot say that the learned judge of the district court was wrong in discarding it.

Finding no error in the case it is ordered that the judgment be affirmed.    It appearing that a respite has been granted by the governor until Friday, July 13, 1894, in order that defendant might present his appeal in this court it is further ordered that the judgment of the district court be carried into execution as provided in section 377 of the Criminal Practice Act. *Remittitur* forthwith.

*Affirmed.*

PEMBERTON, C. J., and HARWOOD, J., concur.