## RUDOLPH TEGELER v. STATE.

No. A-1263.   Opinion Filed April 5, 1913.

(130 Pac. 1164.)

1.  **GRAND JURY—Clerks of Courts—Criminal Law—Impaneling Grand Jury—Powers of Deputy Clerk—Challenges to Panel—Discretion of Court.** (a) The act of the Legislature of the territory of Oklahoma directing the manner in which grand juries should be impaneled was expressly repealed by Act Cong. Feb. 9, 1906, c. 155, 34 St. at L. 11.

(b) A deputy clerk may perform the purely ministerial duties which are performed by the clerk of the district court in the matter of recording the list of jurors upon the journal of the court and certifying to the correctness thereof.

(c) It was not error for the trial court to overrule a challenge to the panel of the grand jury because the grand jury was selected after the commencement of the term of the court at which the indictment complained of was returned, instead of before the commencement of such term.

(d) A substantial compliance with the law in the matter of selecting, summoning, and impaneling grand jurors is all that the law requires.

(e) It is discretionary with the court to permit the withdrawal of a plea of not guilty for the purpose of allowing a defendant to file a motion to set aside an indictment, and such action will not be reviewed upon appeal, unless an abuse of this discretion is shown.

2.  **VENUE—Change of Venue—Proceedings.** (a) Where a defendant has filed motion for a change of venue supported by affidavits as provided by law, the state may file counter affidavits putting in issue the grounds upon which such change of venue is sought.

(b) Where a motion for a change of venue is filed and affidavits in opposition to such change of venue are presented by the state, the court may have the parties making such affidavits on both sides or such other persons as the court may think proper sworn as witnesses and examined in open court regarding the controversy.

(c) The presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense was committed, and, if this is not true, the burden is upon the defendant who seeks a change of venue to establish his right thereto.

(d) The granting of a change of venue is discretionary with the trial court, and will not be reviewed upon appeal, unless it

Statement of Facts.

is made clearly to appear that there has been an abuse of this
discretion.

3.  JURY—Criminal Law—Right to Justice—Qualifications of Jurors—
"Prejudice"—"Impartial"—Harmless Error. (a) It is the constitu-
tional right of every citizen of Oklahoma, if charged with a
criminal offense, to have a public trial by an impartial jury of
the county in which the offense was committed, and that upon such
trial justice shall be administered to him without sale, denial, delay,
or prejudice.

(b)  The acts of the Legislature with reference to the conduct
of criminal cases and the qualifications of jurors must be con-
strued in connection with and in subordination to the provisions
of our Constitution. The words "prejudice" and "impartial," as
used in our Constitution, have no narrow, technical meaning in a
legal sense, and must be construed as used in the everyday affairs
of life, and as understood by persons of ordinary intelligence.

(c)  "Prejudice" means prejudged; without due examination;
an opinion formed beforehand.

(d)  "Impartial" means not favoring one more than another;
treating all alike; unbiased; equitable, fair and just.

(e)  Light impressions, which may fairly be presumed to
yield to the testimony that may be offered, which may leave the
mind to a fair consideration of the testimony, constitute no suffi-
cient objection to a juror, but those strong and deep impressions
which close the mind against the testimony that may be offered
in opposition to them, and which will combat that testimony and
resists its force, will disqualify a juror.

(f)  Where a juror testifies on his voir dire that he has a fixed
opinion as to the guilt of a defendant, which it will take strong
evidence to remove, and that he was then upon one side of the
case, such juror is clearly disqualified; and the mere fact that
the juror may be of the opinion that he can try the case fairly
and impartially by the testimony heard in court and the instructions
of the judge does not qualify such juror.

(g)  The doctrine of harmless error has no application to a
case in which the defendant has been deprived of a substantial
right.

(Syllabus by the Court.)

*Appeal from District Court, Oklahoma County;
G. A. Brown, Judge pro tem.*

Rudolph Tegeler was convicted of murder and his punish-
ment assessed at confinement in the penitentiary for life, and
he appeals. Reversed and remanded for new trial.

*Taylor, Pruiett & Sniggs, A. C. Cruce, A. N. Munden,* and *E. G. McAdams,* for appellant.'

*Smith C. Matson,* Asst. Atty. Gen., and *Sam H. Harris,* for the State.

FURMAN, J.    First. When this case was reached for trial, appellant requested the court to permit him to withdraw his plea of not guilty, and file a motion to quash and set aside the indictment. This motion was by the court overruled, and the motion to quash the indictment which had been filed was stricken from the records, to all of which appellant duly excepted.

The motion to quash and set aside the indictment contains 44 separate paragraphs, alleging that the grand jury which found the indictment in this case was not organized as directed by law. There are a number of good and sufficient reasons why the trial court did not err in striking out and refusing to consider this motion. It is only necessary to state one of these reasons, viz.: The territorial law upon which counsel rely had been repealed nearly two years before this indictment was presented. The indictment in this cause was presented by the grand jury of the district court of Oklahoma county at the first term of said court after the incoming of statehood in 1907. The act of the Legislature of the territory of Oklahoma directing the manner in which grand juries should be impaneled was expressly repealed by the Act of February 9, 1906, of the Congress of the United States. See Federal Statutes Annotated, Supplement 1909, p. 327; Act Feb. 9, 1906, c. 155, 34 Stat. at L. 11. So it appears that the statute upon which counsel rely had been repealed nearly five years before the motion was filed, and nearly two years before the indictment was presented. If counsel had investigated this question thoroughly, they would have saved themselves much inventive labor in thinking up reasons why the Territorial law had not been literally complied with, for this court has twice passed upon this question and construed the act of Congress of

February 9, 1906. In the case of *Reed v. Territory of Okla.*, 1 Okla. Cr. 481, 98 Pac. 583, 129 Am. St. Rep. 861, this court held that a deputy clerk may perform the merely ministerial duties directed by this act of Congress to be performed by the clerk of the district court in the matter of recording the list of the jurors upon the journals of the court, and certifying to the correctness thereof.

In the case of *Price v. Territory*, 1 Okla. Cr. 508, 99 Pac. 157, this court in construing this act of Congress held that it was not error for the trial court to overrule a challenge to the entire panel of the grand jury because the grand jury was selected after the commencement of the term of the district court at which the indictment complained of was returned, instead of before the commencement of such term, as provided by this act of Congress, and that the provisions of the act as to the time of the selection of the grand jury were directory only. These opinions have never been questioned, and will be found quoted in the Supplement of 1909 of the Federal Statutes Annotated, on page 328. All of the decisions cited by counsel for appellant were in cases where the indictments in question were presented by grand juries before the repeal of the territorial law. They therefore have no reference to the law existing at the incoming of statehood. This court is committed to the doctrine that where there has been a substantial compliance with the law with reference to the selection of a grand jury, and where no injury is shown to a defendant, a motion to quash the indictment upon the grounds relied upon in this case should be denied. It is nowhere contended in the brief of counsel for appellant that there was a failure to comply substantially with the requirements of the Act of Congress of 1906 which was in force when this indictment was presented in the matter of impaneling the grand jury. The trial court, therefore, did not err in striking from the record the motion to set aside the indictment.

In addition to this, the court had the right to refuse permission to withdraw the plea of not guilty. The statutes on this subject are specific and reasonable. The failure of a defendant to file a motion to set aside an indictment at the proper time cannot reasonably be said to give him the right to file such a motion at any time upon the ground that the facts stated in such motion were not previously known to one of his attorneys when appellant had had for years a number of other attorneys employed in his defense. Even if the motion now under consideration had been good upon its face, it was discretionary with the court to permit the withdrawal of the plea and a consideration of the motion. This is not an open question in Oklahoma. See *Hunter v. State,* 3 Okla. Cr. 533, 107 Pac. 444; *Weatherholt v. State, post,* 131 Pac. 185, decided at the present term. The views expressed in these cases are without exception sustained by the authorities.

In the case of *State v. Lamon,* 10 N. C. 175, the Supreme Court of that state said:

"It is complained of that the prisoner moved the court for leave to withdraw his plea of not guilty, and to plead in abatement, or to add a plea in abatement, to the plea of not guilty, which the court refused. This, however, was a subject altogether with the discretion of the court, and could not be claimed as a matter of right, for, when the prisoner had once pleaded, he was bound to abide by the defense he had chosen. An act done in the exercise of a legal discretion is not the subject of appeal to this court."

In the case of *Richards v. State,* 82 Wis. 172, 51 N. W. 652, the Supreme Court of Wisconsin said:

"Assuming (but not deciding) that there was a failure or omission of a legal examination, the accused waived the same by pleading to the merits before he offered or attempted to interpose the plea in abatement. His application, after such waiver, for leave to withdraw his plea in bar, and to interpose such plea in abatement, was therefore addressed to the sound discretion of the circuit court, and the refusal of the court to grant such leave cannot properly be held erroneous, unless there was a clear abuse of discretion involved in the ruling. Consid-

ering that the application was delayed until the cause was called for trial and the prosecution had been put to the expense of preparing for trial, and considering also that, had the application been granted, and had judgment gone for the accused on the dilatory plea, it would not have barred—presumably would not have prevented—the institution of another prosecution for the same crime, we are unable to say that the denial of the application was an abuse of discretion. On the contrary, under the circumstances of the case, we think it was a very proper exercise of its discretion by the circuit court."

In 12 Cyc. p. 300, the law on this subject is stated as follows:

"It is wholly in the discretion of the court whether a plea of any sort may be withdrawn. Permission may always be granted, but, unless an abuse of discretion is shown, the refusal to permit the withdrawal of a plea is not error."

See, also, 17 Nev. 275, 30 Pac. 891; *Adams v. State,* 28 Fla. 511, 10 South. 106; *Mills v. State,* 76 Md. 274, 24 Atl. 229; *Early v. Commonwealth,* 86 Va. 921, 11 S. E. 795; *People v. Allen,* 43 N. Y. 28.

In this case the plea interposed was purely dilatory. If it had been sustained, it would not have barred or prevented the presentation of another indictment against appellant by the grand jury of Oklahoma county. Under all of the circumstances, we think that, even if the motion had been good upon its face, the ruling of the trial court was a proper exercise of discretion.

Second. Appellant filed a motion for a change of venue, in which it was alleged that the minds of the inhabitants of Oklahoma county were so prejudiced against appellant that he could not receive a fair and impartial trial in said county. This motion was duly sworn to by appellant. It was supported by the affidavits of five compurgators. In reply to this motion, the state filed the affidavits of 104 citizens of Oklahoma county, in each of which it was stated that there was no such feeling or prejudice against appellant in Oklahoma county as would prevent him from having a fair and impartial trial before a jury of said county. Section 28, Williams' Const. Okla., provides that the venue of a criminal case may be changed to some other county

of the state on the application of the accused. Section 6766, Comp. Laws (Rev. Laws, 5811), among other things, provides that a change of venue may be had on the application of the defendant by petition, setting forth the facts verified by affidavit, supported by the affidavits of at least three credible persons who reside in said county. It further provides that the county attorney may introduce counter affidavits "to show that the persons making affidavits in support of the application for a change of venue are not credible persons, and that a change is not necessary." Under this statute, the state may file counter affidavits stating any fact or facts that would show that a change of venue was not necessary. If the court is of the opinion upon an inspection of the affidavits filed in support of and in opposition to a motion for a change of venue that a change of venue should not be granted, then it should be so ordered; but, if the court is not satisfied on this question, it may have all of the parties making these affidavits on both sides and such other persons as the court may think proper sworn as witnesses and examined in open court touching the matter in controversy. The presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense was committed, and, if this is not true, the burden is upon the defendant to establish his right to a change of venue. The granting of a change of venue is by the Constitution and statute made discretionary with the trial court, and this court will not reverse a ruling of the trial court denying an application for a change of venue, unless it is made clearly to appear that there has been such an abuse of this discretion as to amount practically to a denial of justice. By abuse of discretion is meant a clearly erroneous conclusion and judgment; one that is clearly against the logic and effect of the facts presented in support of and against the application. Whatever the decisions in other states may be, this is not an open question in Oklahoma. See *Starr v. State,* 5 Okla. Cr. 440, 115 Pac. 356; *Turner v. State,* 4 Okla. Cr. 164, 111 Pac. 988; *Black v. State,* 3 Okla. Cr. 547, 107 Pac. 524; *Johnson v. State,* 1 Okla. Cr. 321, 97 Pac. 1059, 18 Ann. Cas. 300.

Third. Appellant complains at the action of the trial court in overruling his challenge to a number of the jurors. Section 14, Williams' Const. Okla., is as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

Section 28, Williams' Const. Okla., among other things, provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

These two sections of our Constitution constitute the paramount law which must control in the selection of juries and the conduct of all criminal trials in the state of Oklahoma. Any act of the Legislature with reference to the conduct of criminal cases and the qualifications of jurors must be construed in connection with and in subordination to these two provisions of our Constitution. Justice must be administered without prejudice, and the juries in criminal cases must be impartial in the courts of Oklahoma, is the express and imperative mandate of our Constitution, and by this mandate we are bound, it matters not what our individual views may be or what any other court may have decided. This is the end of the matter, and shuts out all discussion so far as the courts of Oklahoma are concerned. The words "prejudice" and "impartial" have no narrow, technical meaning in a legal sense, but are words commonly used in the everyday affairs of life, and their meaning is well understood by all persons of ordinary intelligence. Webster's New International Dictionary defines "prejudice" as "an opinion or judgment formed beforehand, or without due examination; a prejudgment." It therefore necessarily follows from this that justice is not administered without prejudice where the jury have prejudged the matters of fact submitted to them for determination. Webster's New International Dictionary defines "Impar-

tial" as "not favoring one more than another; treating all alike; unbiased, equitable, fair, and just." It therefore necessarily follows that, if a juror favors one side in a criminal case more than the other, such juror is not "impartial."

This interpretation of the two provisions of the Constitution above quoted is not only in harmony with common sense and justice, but it is supported by the great weight of legal authority. We will only cite a few of the decided cases. "Prejudice" as prepossession; judgment formed beforehand without examination. *Hudgins v. State,* 2 Ga. (2 Kelly) 173, 176. "Prejudice" means prejudgment, judgment beforehand; and such is its meaning when applied to a juror. *State v. Anderson,* 14 Mont. 541, 545, 37 Pac. 1. "Prejudice" means a prejudging of a case from any cause. It means a settled and fixed opinion, either as to the guilt or innocence of an accused, no matter from what cause that opinion is derived or upon what it is based, whether from rumor, hearsay, newspaper report, or evidence upon a former trial, or from anything else, if it is fixed and settled. *Hinkle v. State,* 94 Ga. 595, 597, 21 S. E. 595, 600. The word "prejudice," as used in Code Cr. Proc. art. 578, providing for a change of venue when there exists so great a prejudice against the accused as to preclude a fair trial, refers to a prejudice which may exist, either as against the accused himself, or by reason of a prejudgment of his cause. *Randle v. State,* 34 Tex. Cr. R. 43, 57, 28 S. W. 953, 954. "Prejudice" as used with respect to veniremen, means the same as prejudgment; that is, one who has prejudged a person's guilt of the accusation charged against him has a prejudice against such person. *Randle v. State,* 34 Tex. Cr. R. 43, 28 S. W. 953, cited approvingly in *Faulkner v. State,* 43 Tex. Cr. R. 311, 65 S. W. 1093, 1095. The word "prejudice" in a statute making the prejudice of a juror a ground of challenge "seems to imply nearly the same thing as 'opinion,' a prejudgment of the case, and not necessarily an enmity or ill will against either party. The statute intended to exclude any person who had

made up his mind or formed the judgment in advance in favor of either side." *Commonwealth v. Webster,* 59 Mass. (5 Cush.) 295, 297, 52 Am. Dec. 711. "Prejudice" means prejudgment, judgment beforehand. *State v. Anderson,* 14 Mont. 541, 37 Pac. 1.

"According to the definition of our standard lexicographers, a man who is impartial is one who is not biased in favor of one party more than another; who is indifferent, unprejudiced, disinterested; as an impartial judge or arbitrator. The primary idea contained in this definition is freedom from personal bias, indifference between the parties as persons; not prejudiced against one or the other; disinterested as between them." (*Eason v. State,* 65 Tenn. [6 Baxt.] 466, 469.)

"Impartial" means not partial; not favoring one party more than another; unprejudiced; disinterested; equitable; just. *Randle v. State,* 34 Tex. Cr. R. 43, 28 S. W. 953, citing Webst. Dict.; *Curry v. State,* 5 Neb. 412, 413; *Thompson v. Beacon Valley Rubber Co.,* 56 Conn. 493, 498, 16 Atl. 554; *Cole v. Curtis,* 16 Minn. 182, 194 (Gil. 161).

"A juror, to be impartial, must, to use the language of Lord Coke, be indifferent as he stands unsworn." (*Reynolds v. United States,* 98 U. S. 145, 154, 25 L. Ed. 244 [quoting Co. Litt. 155b.])

"As used in Const. sec. 9, art. 1, securing to the accused in all criminal prosecutions a public trial by an impartial jury, the word is not used exclusively in its primary sense, but in its secondary or more general sense, as freedom from any bias, or indifference or disinterestedness. An impartial juror is one who enters the box indifferent in feeling and in opinion." (*Eason v. State,* 65 Tenn. [6 Baxt.] 466, 469.)

"The constitutional guaranty that in all criminal prosecutions the accused shall have the right of trial by an impartial jury means a jury not biased in favor of one party more than another; indifferent; unprejudiced; disinterested. This right to have an impartial jury cannot be abridged, and therefore the body of the triers should be composed of men indifferent between the parties, and otherwise capable of discharging the duty of jurors. Whether in the practical administration of justice the right is infringed is necessarily a judicial question, and whether, in a particular case, a proposed juror has the

state of mind which will render him impartial, is a question of fact which it is the duty of the court trying the case to decide." (*Curry v. State,* 5 Neb. 412, 413.)

" 'Impartial,' as applied to a jury, means not favoring a party or an individual because of the emotions of the human mind, heart, or affections. It means that, to be impartial, the party, his cause, or the issues involved in his cause, should not, must not, be prejudged." (*Randle v. State,* 34 Tex. Cr. R. 43, 58, 28 S. W. 953, 954.)

With this explanation and construction of the provisions of our Constitution governing this matter we will now consider our statutory provisions. Section 6814, Comp. Laws 1909 (Rev. Laws, 5861), is as follows:

"In a challenge for implied bias, one or more of the causes stated in the second preceding sections must be alleged. In a challenge for actual bias the cause stated in the second subdivision of the third preceding section must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor; statements in public journals, or common notoriety; provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered upon the minutes of the court."

It will be seen from an examination of this section of our statute that any juror who has formed or expressed an opinion from any source whatever upon the matter or cause to be submitted to him is *prima facie* disqualified, unless it appears to the court that such juror can and will, notwithstanding such opinion, act impartially and fairly upon the matter to be submitted to him.

In the early case of *Johnson v. State,* 1 Okla. Cr. 343, 97 Pac. 1068, 18 Ann. Cas. 300, this provision of our statute was construed in connection with the provision of our Constitution as follows:

"But the enumerated causes of challenge in the statute are not exclusive of all others not enumerated. When the juror

has any opinion as to the guilt of the defendant, it matters not how this opinion was formed, the closing paragraph of the statute provides that it must appear to the court that the juror can and will act fairly and impartially in the case. But, if this provision was not in the statute, we would be forced to place this construction upon the first part of the statute, because section 29 of our Constitution (Bunn's Ed.) is in this language: 'In all criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury.' Const. art. 2, sec. 20. Any statute which would even tend to deprive a defendant of a trial by an impartial jury would be unconstitutional and void. Although a juror may know absolutely nothing about the facts of the case, and may not have the slightest opinion as to the guilt of the defendant, yet, if from any cause or upon any ground it appears to the trial court that the juror is biased or prejudiced against the defendant, it cannot be said that he would be a fair and impartial juror, and he should be excluded from the jury; otherwise the Constitution of the state would be disregarded and trampled upon. The trial court should resolve all doubts upon this matter in favor of the defendant. Upon the other hand, when no personal, class, or race bias or prejudice appears to exist in the mind of the juror against the defendant, but it does appear that from rumor, or reading the public press, or from notoriety, the juror has an opinion as to the guilt of the defendant, but that such opinion will not combat the testimony or resist its force, and the court is satisfied that the juror can and will lay this opinion aside, and base his verdict alone upon the testimony of the witnesses and the instructions of the court, then the juror is competent. To our minds this is the only rational construction which can be placed upon our statute."

Whenever upon the examination of a juror it appears that he has an opinion as to the guilt or innocence of the accused, or whenever the fairness and impartiality of such juror is called in question, the trial court must be clearly satisfied that such juror is fair and impartial, and that such opinion will not in any manner influence such juror in considering the testimony and arriving at his verdict, and it is the duty of the trial court to resolve all doubts on this question in favor of the accused;

otherwise the constitutional provisions hereinbefore quoted would become idle and nugatory.

In the case of *Scribner v. State,* 3 Okla. Cr. 610, 108 Pac. 426, 35 L. R. A. (N. S.) 985, in an opinion by Judge Owen, this court said:

"It has been urged in this case that on the evidence produced the jury could not have returned other than a verdict of guilty, and therefore the defendant was not prejudiced by reason of the fact that some of the jurors had formed an opinion as to his guilt. As to whether a different verdict could not have been returned on the evidence we are not called upon to decide. We might concede that such is true; that being true, we cannot agree that the defendant was not deprived of the rights guaranteed to him under our Constitution. The fact remains that this jury fixed his punishment at death. In determining this case, although the evidence may show the defendant guilty beyond all peradventure of a doubt, and sufficient to support a verdict with the death penalty, we must nevertheless set a precedent under which a perfectly innocent man may be tried and have preserved to him his constitutional rights of the presumption of innocence and a trial before an impartial jury. If a juror has prejudged the guilt of the defendant before hearing the sworn testimony, then it cannot be said that the defendant had a trial before an impartial jury. It is a physical impossibility for a juror, who has an opinion based on what he has understood to be the facts in the case, to weigh the evidence as though he had never heard of the case, and had not already made up his mind. He may have an earnest and conscientious desire to do so and to deal out exact justice, but he will unconsciously attach a greater weight to the evidence which conforms to his preconceived opinion than he would otherwise do. He is not in that frame of mind which the Constitution contemplates, and which is necessary to enable him to fairly and impartially judge as to the weight to be given to the evidence of each witness appearing before him. The determination of the qualifications of a juror is a matter addressed to the discretion of the trial court, and the question to be determined here is whether the trial court in this case abused this discretion, to the prejudice of the defendant. After a careful review of the numerous authorities called to our attention by the counsel in the case, and those which we have been able to find by our own

efforts, we are convinced that the court did abuse such discretion to the prejudice of the defendant. The principle that every reasonable doubt must be resolved in favor of the defendant applies in this instance as well as to the evidence offered before the jury on the final trial. The evidence offered as to the qualifications of the jurors enters into and becomes a material part of the trial, as much so as the evidence offered by the witnesses on the part of the state, and in this case the trial court should have resolved that doubt in favor of the defendant, and sustained his challenge for cause to these jurors."

In the case of *Turner v. State,* 4 Okla. Cr. 164, 111 Pac. 988, in an opinion by Judge Doyle, this court reaffirmed the doctrine announced in the case of *Johnson v. State, supra,* and in the case of *Scribner v. State, supra.* After quoting from Johnson's and Scribner's cases, Judge Doyle said:

"Under the statute, an opinion formed or expressed as to the guilt or innocence of the defendant founded upon rumor or newspaper reports does not disqualify a juror, provided it appears to the court, upon the declaration of said juror, he can and will, notwithstanding such opinion, act impartially and fairly upon the law and evidence. As we construe the statute, the competency of a juror is a question of fact to be determined by the court in the exercise of a sound discretion and constitutes a legislative definition of the constitutional provision; however, it cannot be regarded as changing in any degree the essential qualifications which jurors must possess. It merely furnishes a test by which those qualifications are to be determined. It makes the declaration of the juror 'that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him, competent, as bearing upon the question of his impartiality, and requires the court to consider such declaration, when so made.' The statute does not attempt to determine what shall be the probative force of the declaration of the juror, or how far it shall have the effect of relieving him on the disqualification arising from such an opinion. The declaration when so made is evidence to be received and given such weight as, under all circumstances appearing, it is fairly and justly entitled to. Before it can operate to remove the disqualification, the court must be satisfied of its truth, and that question is left to be determined from all the facts and circumstances appearing from his examination upon the *voir dire.* In

the case of *Coughlin v. People*, 144 Ill. 140, 33 N. E. 1, 19 L. R. A. 57, a similar statute was construed. Chief Justice Bailey, rendering the opinion of the court, in part said: 'In the review of the authorities we have already made, it has sufficiently appeared that where the opinion of the juror is only slight or transient, or is hypothetical, very considerable reliance is placed upon his statement under oath that his opinion is not of such character as will interfere with his action as a juror. Indeed, where the opinion is shown to be of that character, such statement is usually one of the most satisfactory tests of the juror's impartiality. But the holding of this and other courts is substantially uniform that, where it is once shown that there exists in the mind of the juror at the time he is called to the jury box a fixed and positive opinion as to the merits of the case, or to the guilt or innocence of the defendant he is called to try, his statement that, notwithstanding such opinion, he can render a fair and impartial verdict according to the law and the evidence, has little if any tendency to establish his impartiality. This is so because a juror who is shown to have in his mind a fixed and positive opinion as to the guilt or innocence of the accused is not impartial, as a matter of fact, to say nothing of those legal conclusions which formerly prevailed, and which would still prevail, if the statute were not in existence. His statement that he can render a fair and impartial verdict does not tend to show that he is not partial, since it does not tend to show the nonexistence of the fixed and decided opinion to which he had already confessed. It merely tends to show that the juror, while admitting that he has prejudged the prisoner's guilt, believes in his ability to act as though he had not done so, or that, while admitting his actual partiality, he believes in his ability to act as though he were impartial. It being constantly kept in mind that the fact to be proved by the juror's answer is that he is impartial in the constitutional sense of the word, it is difficult to see how, after a juror has avowed a fixed and settled opinion as to the prisoner's guilt, a court can be legally satisfied of the truth of his answer that he can render a fair and impartial verdict, or find therefrom that he has the qualifications of impartiality, as required by the Constitution.' The fact in the present case that the juror was possessed of an opinion that the defendant was guilty, and that this opinion was based upon the statements of the two principal witnesses for the state, whose names appear as the first indorsed upon

the indictment, and upon whose testimony the state expected to prove its case, was clearly sufficient to render the juror incompetent, and we believe that the court below erred in overruling the defendant's challenge for cause to the juror Blackburn."

Let us now apply the principles of law hereinbefore stated to the question now before us. We only deem it necessary to discuss the objections made to J. B. Johns, who acted as foreman of the jury. He frankly stated in answer to the first question that he had formed an opinion as to the guilt or innocence of the defendant; that he was present for a short time at one of the former trials of the defendant; that it was possible that he may have talked with some of the witnesses in the case, but that he was positive he had talked with other parties who detailed to him the purported evidence in the case, and that he had read accounts of this matter in the newspapers; that evidence might change the opinion which he had as to the guilt or innocence of the defendant, provided such evidence was sufficient to overcome it; that, if selected as a juror, it would be his duty to try the case under the instructions of the court and from the evidence heard upon the witness stand; that, if such evidence was sufficient, it would change the opinion which he then had as to the guilt or innocence of the defendant.

On cross-examination by counsel for appellant the record contains the following questions and answers:

"Q. All right; now we will get at it this way. You have an opinion now as to this man's guilt or innocence, haven't you? A. Yes, sir. Q. You are standing now on one side of this question, aren't you? A. Yes, sir. Q. Now, if you are sworn as a juror, you would go into the jury box having that opinion, wouldn't you? A. Yes, sir. Q. And you say it would require strong evidence to remove that opinion? A. Sufficient. Q. Yes. If what you hear here on the witness stand is in harmony with what you heard before going into the jury box, that opinion never would be changed, would it? A. Unless subsequent evidence would change it. Q. Well, now; catch my question, Mr. Johns. I think you understand it fully. If what you hear here on the witness stand in this case is in harmony, and not in conflict with what you have heard in the past, that opinion

would not be changed when you would go to make up your verdict, would it? A. No, sir. * * * Q. Now, Mr. Johns, so I can explain to you. Now, taking for granted that your opinion is one way or the other, that the defendant is guilty or that he is innocent, now, I will give you the two propositions so you can thoroughly understand them, and don't answer the first until I give you the second. If you should be selected as a juror in this case, if that opinion is that the defendant is guilty, it would require less evidence upon the part of the state for you to convict him than it would if you did not have the opinion you have, and, if you believe him innocent, it would require greater evidence upon the part of the state for you to convict him than if you did not have that opinion. Your answer 'Yes' or 'No' just with the two propositions together. A. Yes; I think that would be the right answer, if I understand the question correctly. Q. In other words, you would go in there with a fixed opinion in your mind that would require strong proof to remove it? A. I think so; yes, sir. Q. You have no doubt about that, have you? A. None in the world.

"Mr. Pruiett: Challenge the juror for cause.

"Examined by the Court:

"Q. Did you ever sit on the trial of a felony case, Mr. Johns? A. No, sir. Q. If you are selected as a juror, you would be required and instructed to try the case and arrive at your verdict alone upon the evidence adduced in this case, under the instruction of the court as to what the law is; that the defendant is presumed to be innocent until his guilt is established by competent evidence beyond a reasonable doubt, and in the event you have a reasonable doubt, after you have heard all the evidence, then you must acquit him. Now, if you were taken on the jury in this case, after you have heard the evidence, and sworn to try the case according to the evidence, could you do that and would you do it, uninfluenced in any degree by what you have read in the newspapers, or the opinion you have formed, or would you be influenced in arriving at your verdict by that opinion or those newspaper reports? A. I would be influenced; my mind would be influenced until changed by evidence to influence it; it would have no more effect than if I had not that knowledge or mind made up until it was changed by evidence that I was satisfied. Q. Well, you understand that, if you are taken as a juror, you are to try the case upon the evidence? A. Yes, sir. Q. Not

upon what your personal idea might be. It would be your duty to ignore them—disregard them—it would not make any difference which way it is, and to try the case alone upon the evidence and base your verdict alone from the evidence heard, disregarding altogether what you have read or the opinion you have formed therein. A. Yes, sir. Q. Now, the question is, could you do that? A. I certainly could and certainly would. Q. You feel that you could and you would? A. Yes, sir. Q. Have you any doubt at all about your ability now to wholly disregard the opinion you have formed, and what you have read in the newspapers and return your verdict, if selected as a juror, alone upon the evidence heard here and submitted under the rules of the court? A. I could. Q. Have you any doubt at all about your ability to do that? A. None in the world."

The court held the juror competent and overruled appellant's challenge, to which appellant excepted and the juror was duly sworn.

This juror testified positively that he then stood on one side of the case, and that he had in his mind a fixed opinion as to the guilt of the appellant, which it would take strong evidence to remove. When asked as to whether he had any doubt about that, his emphatic reply was, "None in the world." Neither of these statements was ever modified by him. Considering the entire examination of this juror in connection with all of the facts which are presented by this record, and the effect is the same as if the juror had testified that he had a fixed opinion that appellant was guilty which it would take strong evidence to remove, and that the juror was then on one side of the case. With what show of reason and truth can it be said that justice has been administered without prejudice? What is the duty of this court? To feel the public pulse or to vindicate the supremacy of the Constitution? As is well said by Judge Doyle in *Turner's case, supra*:

"But it may be said that the juror stated upon his *voir dire* that he had no bias or prejudice against the defendant, and that he could try the case fairly and impartially, and notwithstanding his opinion he would be governed exclusively by the evidence in the case and the instructions of the court, regard-

less as to what Carters had said. These statements were made in response to leading questions by the court, which questions were objected to by the defendant. In the case of *State v. Otto,* 61 Kan. 58, 58 Pac. 995, Justice Smith, delivering the opinion of the court, used this language: 'It is the duty of the court, imposed both by statute and by the principles of natural justice, to stand as a vigilant guard over the jury box, to the end that bias, prejudice, and preconceived opinions do not enter. It is better that the first impression of a case come from the testimony of the witnesses after the jurors are sworn to try the case. While there is recognized in the law a distinction between an impression and an opinion, yet there is so little difference between the two, and the step so short from one to the other that courts should be certain that a juror's mind which is possessed of the one has received it with pressure too weak to break over the dividing line.' The juror was probably sincere in his answers to the questions propounded, and he probably would make the same statements even though the questions were not leading, as he undoubtedly and honestly believed that he could try the case impartially. Men are seldom conscious of being biased or prejudiced, or of being in such a condition of mind that they could not try any case impartially."

The fact that said juror did testify in answer to questions from the court that if selected as a juror he could and would wholly disregard such opinion, and base his verdict alone upon the testimony and the charge of the court, did not in our judgment do away with and destroy the effect of his previous testimony; for, if it did, the juror would then become the judge of his own qualifications. When a juror states that he has an opinion as to the guilt of the defendant, he is not made competent to sit in the case merely because he may have stated that he can and will lay aside this opinion if taken on the jury and give the defendant a fair and impartial trial, and be governed alone in making up his verdict by the testimony of the witnesses and the charge of the court. No man is a competent judge of his own impartiality and of his own freedom from prejudice. No statute can clothe a juror with such judicial discretion and power. The competency of a juror is to be decided by the court, who is not bound by the answers made by such juror. It

is the judge, and not the juror, who is charged with the duty of passing upon the competency of the juror, and in the discharge of this duty the judge may have recourse to any other means of information within his power. In fact, he should carefully investigate every source which would be calculated to throw any light upon the competency of the juror, and, if upon such investigation it does not clearly appear that such juror is competent, he should be excluded.

In this case the record shows that there had been three previous trials resulting from the death of James R. Meadows; that appellant had been tried twice, and Mrs. J. R. Meadows had been tried once; that full reports of the testimony and proceedings of these trials had been published in the Daily Oklahoman, a newspaper of large circulation and great influence; that as a result of these trials and publications more or less prejudice existed in the minds of a number of people against appellant which had resulted in a motion for a change of venue. While these things did not make it impossible for appellant to obtain a fair and impartial trial in Oklahoma county, yet they should have caused the trial judge to exercise the greatest caution in passing upon the qualifications of jurors to see that no one who had prejudged appellant should sit upon the jury. The fact that a juror had formed or expressed an opinion as to the guilt of appellant would not necessarily disqualify such juror. The question to be inquired into was as to whether or not this was a fixed opinion such as would place the juror on one side or the other of the case. A mere impression or transitory inclination of the mind which would readily yield to evidence would not constitute a disqualifying opinion. Chief Justice Marshall of the Supreme Court of the United States in *Burr's Trial*, Fed. Cas. No. 14,694, correctly states the rule of law in such cases as follows:

"Light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind to a fair consideration of the testimony, consti-

tute no sufficient objection to a juror, but those strong and deep impressions which close the mind against the testimony that may be offered in opposition to them—which will combat that testimony, and resist its force—do constitute a sufficient objection to him."

The juror Johns testified emphatically that he had a fixed opinion as to the guilt of appellant, which it would take strong evidence to remove, and that he was then upon one side of the case. Who can assert that this juror was not in a condition in which his mind would resist the testimony and combat its force? To hold that such a juror was qualified would be to suspend those provisions of the Constitution which guarantee to every man charged with crime an impartial trial and the administration of justice without prejudice. This court possesses no such power, and has no such inclination. The Constitution is not to be obeyed only when it is convenient to do so, and, when this is not convenient, it cannot be regarded as so much mere sentimental rubbish. It is our duty to give full and vital force to each and every provision of the Constitution which is involved in a criminal trial. The Constitution should be liberally construed in favor of the rights and liberties of the people, but should be strictly construed against usurpations of authority and neglect of duty on the part of all officers from governor to constable.

But it is claimed that upon an examination of the entire record it clearly appears that appellant is guilty, and that the error of the trial court in this matter therefore becomes immaterial and harmless. We heartily assent to the proposition that, when a defendant has been properly indicted and the evidence clearly shows that he is guilty, a conviction should not be set aside on account of any error in matters of form or any technicality or exception which did not deprive the defendant of some substantial right. We have uniformly adhered to this rule, as our decisions will show; but it is an utter misconception of the doctrine of harmless

error to suppose that, where a defendant has been deprived of a substantial right, such error was or could be harmless. The Constitution of Oklahoma and the Constitution of the United States declare that no person shall be deprived of life liberty, or property without due process of law. There can be no such thing as due process of law in the trial of a case where the defendant has been deprived of a material constitutional right. We are not unmindful of the fact that appellant has been twice convicted for the murder of James R. Meadows. The first conviction was set aside, because after overruling a motion for a new trial, and before the case-made could be prepared and presented to him for approval, Hon. J. G. Lowe, who presided at the first trial, departed this life. There being no provision of law permitting the approval of a case-made by any other person than the judge who presided at the trial, appellant without fault on his part was thereby deprived of his constitutional right to appeal upon a case-made. See *Tegeler v. State,* 3 Okla. Cr. 595, 107 Pac. 949, 139 Am. St. Rep. 976. There was a second trial, upon which the jury disagreed. Upon the third trial appellant was again convicted of murder. So two juries have said that appellant is guilty. The prosecution of this case has consumed much time and cost many thousand dollars to the people of the state of Oklahoma. We believe there should be an end to criminal cases, and that justice should be executed as speedily as possible. We also believe that the unnecessary reversal of convictions of guilty men places an unjust burden in the matter of expense upon the people. For these reasons we are loath to disturb this verdict, except upon the most grave and serious grounds. But no court has the right to place a price upon or to elevate convenience and expense above justice. Section 14, Williams' Const. Okla., declares that justice shall be administered by the courts to every person without sale and without prejudice. In Oklahoma justice is not a luxury for the rich, but

it is equally the right of the poor as of the rich, without regard to costs and trouble. It is the fundamental constitutional right of every citizen of Oklahoma to receive justice at the hands of the courts without sale and without prejudice, and in case of his indictment, to be tried by an impartial jury. The members of this court would be both cowards and traitors if, influenced by public clamor, they denied these rights to the humblest, poorest, and most friendless person; it matters not how strong and influential the feeling against him might be. It is of far more importance to the free, intelligent, and justice-loving people of Oklahoma that the principles declared in their Constitution should remain intact and be rigidly enforced, and that absolute fairness, impartiality, and justice should control the action of their courts than it is that one man, no matter how guilty, should be convicted. If the substantial provisions of the Constitution may be disregarded in one case, they may be disregarded in all cases, and thus a precedent be established which would eventually result in arbitrary punishment, a consummation dangerous to innocence, destructive to the harmony of the law and utterly inconsistent with our free institutions.

For these reasons, we feel that we are without discretion in this case, and that it is our plain duty to set aside this verdict and grant appellant a new trial for the errors hereinbefore pointed out.

The questions presented in the other assignments of error will probably not arise upon a subsequent trial of this case. It is therefore not necessary that they should now be discussed.

The judgment of the lower court is reversed, and the cause remanded for a new trial.

ARMSTRONG, P. J., and DOYLE, J., concur.